JOHN McGAVOCK, PLAINTIFF IN ERROR, *v.* PETER W. WOODLIEF.

A broker who negotiates the sale of an estate is not entitled to his commission until he finds a purchaser in a situation and ready and willing to complete the purchase on the terms agreed upon between the broker and the vendor.
Where the judge files the statement of facts after the trial, *nunc pro tunc*, it is reasonable to presume that he had been requested to do so at the trial.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the eastern district of Louisiana.

The case is stated in the opinion of the court.

It was argued by *Mr. Benjamin* for the plaintiff in error, and *Mr. Taylor* for the defendant.

*Mr. Benjamin* for plaintiff in error:

It is difficult to institute an argument on a proposition which appears so plain as that the plaintiff's case was not made out on the facts stated to be proven; but as the judge below, even after argument for new trial, persisted in the opinion that plaintiff had proven his case, we will analyze the *allegata* and *probata*.

The plaintiff's petition was clearly demurrable; but as he was allowed to make all the proof he could, the case will be argued on the merits alone. It was necessary for plaintiff to prove—

1st. That he was employed as a broker by McGavock, to effect a sale of his plantation.

2d. That he did find a purchaser willing and able to buy the plantation at the price and terms fixed by McGavock, to wit, for $130,000, payable $20,000 in cash, and the remainder in five equal annual instalments, without interest.

3d. That the sale was actually made and the price received; or, at all events,

4th. That it was his employer's own fault that the sale was not effected; and that the employer's refusal to carry out the sale agreed on resulted from (to use the language of the judge) whim, or caprice, or insufficient reasons.

1st. The statement of facts finds the first fact essential to plaintiff's recovery.

2d. On the second point, the evidence directly contradicts the plaintiff's case.

According to the statement of facts, the purchaser to whom McGavock agreed to sell was one George M. Long; the price was to be $120,000 for the plantation, and $13,500 for the growing crop, to be paid as the crop was sold. This price was to be paid, says the statement, *mainly* in the notes of a Dr. Bard, which notes belonged to Mrs. Long.

Was Long a purchaser able and willing to make the purchase?

The statement says "that he owned no property; or, if he did, that it stood in the name of his wife, and that he had little credit. His credit was not good."

The statement also says of the notes, which were the *main* portion of the price, "that they were the property of Mrs. Long, the wife of George M. Long; that although she at first refused to permit the notes to be used in the purchase of the plantation and slaves from McGavock, she afterwards consented that they should be so used, *on condition that the sale of the plantation and slaves should be made to her*."

Can anything be clearer, then, than the fact that the pur-

chaser procured by the broker was unable to buy, because he could not pay the price agreed on?

The petition contains no allegation of a sale to *Mrs.* Long. The statement of facts shows no consent of McGavock to sell to her. It shows not even a proposition to McGavock to sell to Mrs. Long; nothing but a power of attorney from her to the broker, to buy the property for her, with her husband's consent. It does not appear that her husband ever agreed to this, nor that her offer was ever communicated to McGavock.

The only purchaser procured by the broker being shown to be unable to comply with his bargain, on what conceivable ground could McGavock be compelled to pay a brokerage commission?

But the statement shows that Mrs. Long herself was unable to comply with the terms agreed on. It says, "that it was in the contemplation of purchaser and seller that the notes of Dr. Bard should be substituted in the place of those which had been given by McGavock to Thibodaux, when McGavock purchased it from Thibodaux."

Here, then, McGavock stipulated that his own notes should be taken up and returned to him, by substituting Bard's notes. But some of McGavock's notes, amounting to at least $20,000, were in the hands of Cammack, Squires, & West, and the statement says "that application was made by the plaintiff, and by Long, to the said firm, to substitute the notes, &c., but that no satisfactory answer was received."

How is this difficulty to be obviated? Here is a positive condition of the sale, an important condition, which the purchaser finds it impossible to comply with. Was McGavock bound to sell, and leave his own notes for $20,000 outstanding? It is true, that in the statement of facts the judge says that he "sees no reason to doubt that *Long and wife* would have been prepared to comply with the terms of the contract, * * * even if they were required to pay cash the amount for which Cammack, Squires, & West, were endorsers, by *having discounted a portion of Dr. Bard's obligations.*"

It is obvious that this last quotation contains no statement of any *fact*, but a mere inference of the judge from the other facts proven; in other words, it is a *reason* given for his judgment.

But this passage is curious, as exhibiting how far the court had travelled away from the true issue, which was simply this: "Was George M. Long, who made the purchase, able to comply with the condition of substituting Bard's notes for McGavock's?" The statement admits that he did not own Bard's notes, and could not get them for his own purchase; and that

if he did, the holder of McGavock's notes would not make the exchange.

Thereupon the court decides that McGavock was bound to sell to *Mrs.* Long, or to *Long and wife,* and infers, in opposition to the direct fact that the substitution of notes was impracticable, that "Long and wife *would have been prepared to pay cash by discounting Bard's notes.*"

Surely this is making a bargain for McGavock, not executing one made by him.

3d. It is admitted that no sale was actually made, and no brokerage due therefor for actually effecting a sale.

4th. If it were admitted that brokerage could ever be recovered without an actual sale effected, (a point which it is unnecessary to discuss under a state of facts like that above disclosed,) it is perfectly clear that the recovery could only be had in a case where the party employing the broker had, through his own fault and caprice, prevented the accomplishment of the condition on which the broker's right to commission depends, to wit, the effecting of a sale. As nothing of this kind appears in this case, it is our confident conclusion that the plaintiff in error has been erroneously condemned in the lower court. (Broad *v.* Thomas, 7 Bingh., 99; Read *v.* Rann, 10 Barn. and Cress.)

*Mr. Taylor's* points were the following:

1st. There is nothing in the record which can enable the court to revise the judgment of the court below. (Lathrop *v.* Judson, 19 How., 69.)

2d. The plaintiff in error employed the defendant in error, in his capacity of broker, to find a purchaser and to negotiate a sale of his (the plaintiff in error's) plantation, &c., for him. The defendant in error found a purchaser, brought the parties together, and they came to a distinct understanding and agreement to make and complete a sale of the property, and the sale was not completed only through the fault of the plaintiff in error.

3d. The right of the defendant in error to the usual commission of brokers in such cases became perfect when the minds of the parties to the negotiation were brought to a concurrence, and thus the consideration and terms of the contract of sale with respect to the property to be sold were agreed upon. (C. C. of La., Art. 1797, 1765; Story on Agency, sec. 329; Hammond *v.* Holliday, 1 Cur. and Payne, 387.)

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United

States, held by the district judge for the eastern district of Louisiana.

The suit was brought by Woodlief, a broker in the city of New Orleans, against the defendant, to recover the sum of two thousand six hundred dollars, as a commission for negotiating the sale of a plantation and slaves.

The petition sets out that on the 16th November, 1855, the defendant employed the plaintiff to procure a purchaser for his sugar plantation, situate on the Bayou La Fourche, in the State of Louisiana, and seventy slaves, for the price of $130,000, of which $20,000 was to be paid in cash, and the remainder in five equal annual instalments, with interest. That the plaintiff soon thereafter found a purchaser, namely, George M. Long, of the parish of Carroll, State of Louisiana; and on the 20th November, said Long, with the plaintiff, went to the residence of the defendant, examined the property, and concluded an agreement of purchase according to the terms stated.

The facts set forth in the petition were denied by the defendant, and the cause went down for trial before the court, a jury having been waived, when a judgment was rendered for the plaintiff, for the amount claimed.

The case comes up on a writ of error to this court upon a statement of facts by the judge. The issue was tried in the court below, and the judgment rendered on the 24th June, 1856. A motion for a new trial was heard, and denied on the 9th of October following. The writ of error was then prayed for and allowed, and the statement of facts drawn up and ordered to be filed, *nunc pro tunc*, as of the 24th June, 1856, the day the cause was first tried before the court.

An objection was made on the argument, that this statement of facts could not be noticed, it having been made up after the term in which the cause was tried, and as it did not appear that the court was requested to draw it up at the time of the trial. We are of opinion that, as the judge has drawn up and filed the statement as of the day of the trial, it is but reasonable to presume that he had been so requested at the trial by the counsel for the defendant. We agree that the request must be made at this time, in order to enable the court to notice it in error; but the statement may be drawn up afterwards, as shall be convenient for the judge. This is the settled practice in courts where the proceedings are according to the common law. The bill of exceptions may be settled after, though the exceptions must be taken at the trial.

As to the merits, we are of opinion that there was error in the decision of the court below.

The terms of the sale, as given by the vendor to the plain-

tiff, the broker, were simple and specific—the price $130,000, $20,000 in cash, and the remainder in five equal annual payments. Long, the purchaser, agreed to these terms, as averred in the petition, and not questioned in the case; and if he had offered and was in a condition to consummate the agreement according to its terms, no doubt the commission would have been earned, and the recovery below right. But when the parties proceeded to the execution of the contract of sale, a change was proposed by Long, the vendee, which, for aught that appears upon the facts or in the finding of the judge, was never assented to by the defendant. The change was substantial, and called for a new and distinct agreement before the vendor could be bound. The wife of Long was interposed as the purchaser, the husband being a person of no means or credit. Her means, it appears, consisted of notes given to her by Dr. Bard, for a plantation which she had sold to him; and the greater part of the statement of facts is made up of various negotiations with third parties, by the plaintiff and Long, with a view to turn these notes for the benefit of the defendant, so as to apply them towards payment of the $130,000, the purchase-money. This was to be brought about by substituting them in the place of notes which the defendant had given to one Thibodaux, from whom he had purchased his plantation. Thibodaux was willing to receive the notes of Dr. Bard, in lieu of the defendant's, if the substitution could be legally made, and he could retain a first mortgage on the plantation and slaves as a security. Whether this security could be given, or was agreed to be given, nowhere appears. Twenty thousand dollars of these notes of the defendant were, in some way, under the control of a commercial firm, who were endorsers upon them. A difficulty existed in making a substitution for these. No satisfactory arrangement was made in respect to them, and none at all as concerned the sum of $20,000, which was to be paid to the defendant in cash.

The evidence in the case therefore neither shows that the defendant agreed to this change of the conditions of sale, nor, if he had, that they could or would have been carried into effect by the third persons concerned, nor any evidence of the condition to pay the $20,000 down.

The terms of sale, as we have stated, were very distinct and easily understood; but the terms and conditions of the proposed fulfilment are complicated, confused, involved in doubt and uncertainty, and the fulfilment itself, even upon these conditions, rather conjectural than otherwise.

The learned judge observes, in his statement, "that the court see no reason to doubt that Long and wife would have been

prepared to comply with the terms of the contract, by meeting the wishes of McGavock, the defendant, in regard to the notes given by him when he purchased the plantation from Thibodaux, even if they were required to pay cash for the amount for which the commercial firm were endorsers, by having discounted a portion of Dr. Bard's obligations." This is an opinion of what might have been effected towards the consummation of the contract of sale, rather than what had been done preparatory, and with a view to the fulfilment, which would have been much more pertinent to the issue in the case. As the terms of sale were explicit, the proposal to fulfil should have been equally so. Nothing should have been left to conjecture or speculation. There should have been as much certainty on the one side of the contract as upon the other. Certainty in the offer to fulfil is as important to the vendor as in the terms of the sale to the vendee, and equally necessary before the vendor can be put in fault. The broker must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale.

Judgment of the court below reversed.