## WALL *v.* UNITED STATES ILLUMINATING CO.

*(Supreme Court, General Term, First Department.* January 28, 1889.)

FACTORS AND BROKERS—COMMISSIONS—WHEN RIGHT ACCRUES.

In an action for commissions on a contract procured by plaintiff for defendant to place electric apparatus in a certain building, it appeared that while negotiations had been entered into for the placing of such apparatus in the building, defendant's proposition to that end had not been accepted. *Held,* that plaintiff was not entitled to commissions.

Appeal from circuit court, New York county.

Action by Frank H. Wall against the United States Illuminating Company. A verdict was directed for the plaintiff, and defendant appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and DANIELS, JJ.

*Stephen H. Olin,* for appellant.    *Edward C. Graves,* for respondent.

DANIELS, J.    The verdict was directed in favor of the plaintiff for commissions upon an alleged contract for placing the defendant's electric apparatus in the apartment house known as the "Osborne." To entitle the plaintiff to recover it was incumbent upon him to prove that he had obtained a contract under which the apparatus could be placed by the defendant in the building; for the law is settled that a broker can only become entitled to his commissions by bringing the different parties together in such a manner as to create an agreement for the object intended to be accomplished, and where the broker may appear to have failed in that respect he is not entitled to claim or recover his commissions.    Whart. Ag. 325; *Sibbald* v. *Iron Co.,* 83 N. Y. 378; *McGavock* v. *Woodlief,* 20 How. 221; *Duclos* v. *Cunningham,* 102 N. Y. 678, 6 N. E. Rep. 790.    The point, therefore, on which the motion must be determined is whether the plaintiff obtained for the defendant a contract for placing this apparatus in the Osborne.    A proposal to put in the machinery and the apparatus was contained in a letter written by the president of the defendant to Mr. Osborne on the 2d of July, 1885.    But before this was answered, and on the 13th of the same month, the same person wrote again to Osborne, requiring that what was called the "plant," which included the machinery and apparatus, should remain the property of the defendant by way of security for the payment of the purchase price.    The language of the letter was that "the whole contract price to be secured by an agreement, to be entered into with us by you and the holders of the mortgages, whereby the said plant is to remain the property of the company until fully paid for." Osborne was the owner of the legal title, but the property had been incumbered by mortgages aggregating about $785,000.    These mortgages were held by John Taylor, who did not himself consent that the machinery and apparatus should be placed in the building, subject to this right of the defendant. Mr. Osborne, by his letter of the 14th of July, did accept the defendant's proposition as it was contained in the letters of the 2d and 13th of that month; but he did not undertake in the letter written by him to bind Mr. Taylor. He was known to the plaintiff "as a man that was interested in the building, as furnishing money, and everything was submitted to him that was bought. His approval had to be on everything that was bought." This was the statement of his position, as information of it had been acquired by the plaintiff himself.    And the witness Osborne further testified that his "position in the matter was simply acting for Mr. Taylor, as it was not in my original contract.    When I bought the lots from Mr. Taylor the electric lights were not spoken of to be put in the building, and therefore he controlled that; and therefore I was simply an agent for the amount of that work." Mr. Osborne, after his letter of the 14th of July, wrote to the defendant, withdrawing his own acceptance of the proposition for putting the electric lighting apparatus into the building.    This letter was shown by the president of the company to

the plaintiff, and they went together to see Mr. Taylor; and on that occasion the plaintiff testified that Taylor "said he would not accept the U. S. Illuminating Co.'s plant for that building." From this evidence, as Mr. Osborne accepted the propositions personally, and only upon his own behalf, the inference is clearly warranted that no authorized assent was ever obtained by the plaintiff for the defendant to put this electric plant in the building, or on the terms as to title proposed by the defendant. That authority could only be given, as the plaintiff himself stated the case, with the approval of Taylor; and neither Taylor himself, nor Osborne in his behalf, accepted the defendant's proposal; but, on the contrary, when the subject was brought to the attention of Taylor by Lynch, the president of the defendant, and by the plaintiff together, Taylor refused to allow the apparatus to be put into the building. No contract was ever obtained or made, according to this evidence, by which the defendant was secured the right to put its apparatus and machinery into this building; and the plaintiff therefore failed to bring himself within the legal rule entitling him to the commissions claimed by him. The exception taken to the direction of a verdict is well supported, and the verdict should be set aside, and a new trial ordered, with costs to the defendant, to abide the event. All concur.