# THE SUPREME . COURT

OF THE

## TERRITORY OF ARIZONA

DURING THE YEAR 1897.

[Civil No. 515. Filed March 9, 1897.]

F. M. CZARNOWSKI, Plaintiff and Appellant, v. JOE HOL-
LAND, Defendant and Appellee.

1. BROKERS—REAL ESTATE AGENT—ACTION FOR COMMISSION—EVIDENCE
—FINANCIAL RESPONSIBILITY OF PURCHASER. — In an action to
recover commission for services in selling real estate, it is error
to exclude evidence of the financial responsibility of the buyer.
Before a broker can be said to have earned a commission it must
be shown that he produced a purchaser who was ready and willing
to make the purchase on terms satisfactory to his employer.

2. SAME—SAME—CONTRACT—CONSTRUCTION. — A contract authorizing
a real estate agent to negotiate for the sale of property "and to
receipt for a deposit on such sale, . . . the price to be $5,000
or such lower figure as you may agree to accept," is not to be
construed as requiring a sale for cash alone.

3. CONTRACTS—CONSTRUCTION.—Where a contract admits of two con-
structions, one of which nullifies the contract and the other upholds
it, the former must be discarded and the latter adopted where
it appears that the contract is reasonable and effects no injury
to either party.

4. SAME—SAME—IMPLICATIONS—CONFORMITY TO USAGE.—Stipulations
which are necessary to make a contract reasonable and conformable
to usage are implied with respect to matters concerning which the
contract manifests no contrary intention.

5. BROKERS—REAL ESTATE AGENT—ACTION FOR COMMISSION—EVIDENCE
—QUANTUM MERUIT—NECESSITY FOR WRITTEN CONTRACT.—In an
action by a real estate agent for commission, it is error to exclude
evidence of a written contract for such commission though the
trial court offered to allow the plaintiff to prove the value of his
services in selling the lots in question. To entitle the broker to
recover commissions for effecting a sale of real estate, it is indis-
pensable that he should show that he was employed by the owner
to make the sale, and this employment must be in writing.

[119]

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. A. C. Baker, Judge. Reversed.

The facts are stated in the opinion.

William H. Stilwell, for Appellant.

Fitch & Campbell, for Appellee.

BETHUNE, J.—This is an action brought by plaintiff and appellant against the defendant and appellee for two hundred and fifty dollars commission alleged to be due appellant for services performed as real-estate agent in the sale of lots 1, 2, and 3, block 20, city of Phœnix, October 6, 1893.

This action is based upon the following agreement in writing executed by defendant:—

"PHŒNIX, ARIZONA, October 4th, 1893.

"F. M. CZARNOWSKI. You are hereby authorized and empowered to negotiate for the sale of the following described property, and to receipt for a deposit on such sale: Lots 1, 2, and 3, block 20, in the city of Phœnix, Maricopa County, Arizona Territory; the price to be five thousand dollars or such lower figures as you may agree to accept, the undersigned to furnish a good and sufficient conveyance free of all encumbrance, together with abstract of title, the property to remain in your hands exclusively for twenty days, and thereafter until withdrawn by verbal or written nótice. If sale is made within twenty days from date or thereafter before withdrawal, will pay you five per cent commission, in consideration of which you are to make every reasonable effort to effect such sale.                    JOSEPH H. HOLLAND."

At the trial it was shown that plaintiff had negotiated a sale of the property for the sum mentioned in the agreement, five thousand dollars, with one Thomas Smith, and had received a check of a thousand dollars on the Valley Bank and an agreement from Smith to pay fifteen hundred dollars on the first of the month, with the reservation of the right to pay the balance as soon as the title was all right. The check was made payable to the defendant Holland, and the terms of sale immediately made known to him by the plaintiff, to which

terms defendant acceded, and remarked: "Now I will go
back to the old country on that five thousand dollars, and I
will then live like a prince, but over here I had to scratch
around to get money enough to live on." On the next day
defendant came to plaintiff and said: "I made a mistake. I
did n't mean to sell those lots for five thousand dollars, but
I meant for five thousand dollars a lot," and thereupon repu-
diated the entire transaction, and expressly declared that he
would pay no commission on the sale.

At the trial the contract was introduced in evidence, and
construed to mean that the sale of the property must be en-
tirely for cash, and upon proof of the terms as shown to have
been agreed to by the defendant it was, on motion of defend-
ant, excluded, as not tending to prove the sale, and the jury
were instructed not to consider it, and further instructed that
the defendant was entitled to a verdict, and advised them to
find for the defendant. The court also, before so instructing
the jury, offered to allow the plaintiff to prove a *quantum
meruit;* that is, the value of his services in selling the lots in
question, which plaintiff declined to do, and thereupon the
jury in obedience to the instructions of the court found a
verdict for the defendant.

The first error relied upon by the plaintiff is the refusal
of the court to allow plaintiff to prove the financial responsi-
bility of Thomas Smith, the buyer of the land. The follow-
ing questions were propounded to, and answers made by, the
plaintiff:—

"Q. What do you know of his [Thomas Smith's] financial
responsibility?

"*Mr. Campbell.*—We object to that, as immaterial to the
issues in this case.

"*Mr. Stilwell.*—If the court please, we desire to show that
this man Smith was not only willing but able to take this prop-
erty and carry out the contract at the purchase price.

"*By the Court.*—I will sustain the objection."

To which ruling plaintiff excepted.

This was error. "Before a broker can be said to have earned
his commission, it must also be shown that he produced a pur-
chaser who was ready and willing to make the purchase on
terms satisfactory to his employer." *McGavock* v. *Woodlief,*
20 How. 221, 15 L. Ed. 884; *Wylie* v. *Marine National Bank,*

61 N. Y. 415; *Zeimer* v. *Anticell,* 75 Cal. 509, 17 Pac. 642; *Neiderlander* v. *Starr,* 50 Kan. 770, 33 Pac. 592; *Francis* v. *Baker,* 45 Minn. 83, 47 N. W. 452.

We think it is also error for the court to strike out the contract. We do not think there was manifested by the terms of the contract an intention that the purchase price should be solely for cash. Even if it were, the consent of the defendant to the modifications made would not vitiate or annul the contract, but, acting upon the well-known principle that a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties, and, in case of uncertainty, the language of a contract should be interpreted more strongly against the party who caused the uncertainty to exist, the contract should receive such interpretation. The promisor is presumed to be such party. Where a contract admits of two constructions, one of which nullifies the contract and the other upholds it, the former must be discarded and the latter adopted, where it appears that the enforcement of the contract was reasonable and could effect no injury to either party. Furthermore, stipulations which are necessary to make a contract reasonable and conformable to usage are implied with respect to matters concerning which the contract manifests no contrary intention.

It is nowhere denied that defendant agreed with plaintiff for such a sale as was negotiated by plaintiff with Smith, or that there was ever any claim on defendant's part that the sale should be for cash, and such acquiescence on the part of defendant did not make a different contract than the one offered in evidence. By striking out the contract and leaving plaintiff to his action upon a *quantum meruit,* he was left remediless. That there are cases in which the law will imply a promise to pay for services rendered by one person to another in the absence of any bargain to pay therefor cannot be doubted, but no case has been brought to our attention in which it has been held where proof of employment is indispensable to a right to recover for services that in the absence of such proof a recovery can be had. And to entitle a broker to recover commissions for effecting a sale of real estate, it is indispensable that he should show that he was employed

by the owner to make the sale; and this employment must be in writing.

In *McCarthy* v. *Loupe*, 62 Cal. 299, the court say: "The law in such case would never imply a contract. . . . This particular kind of a contract can only be proved by the introduction of an instrument in writing. Therefore, the plaintiff failed to prove an express contract, and it was upon an express contract alone that he was entitled to recover."

The provision of the code in that state, it is true, specifically provides that the agreement authorizing the employment of an agent or broker to purchase or sell real estate for compensation or commission must be in writing; but we think the same thing is required by the statute of frauds. The written contract in this case being excluded, the plaintiff has no standing in court; but we think he was entitled to rely upon his written contract.

Judgment reversed and the cause remanded for a new trial in accordance with the views which we have expressed.

Rouse, J., concurs.

Hawkins, J., dissents.