# Wytheville.

## PASCHALL & GRESHAM V. GILLISS.

### June 13, 1912.

1. APPEAL AND ERROR—*Verdicts—Conflicting Evidence.*—The verdict of a jury on disputed questions of fact fairly submitted to them will not be disturbed on appeal.

2. ASSUMPSIT—*Common Counts—Work Done—Special Contract—Brokers.*— Where a broker, employed by a written contract to sell land for the owner thereof, has been the efficient cause in effecting a sale of the land, though at a less price than he was authorized to sell under his contract with the owner, his compensation may be recovered under the common counts in *assumpsit,* and the contract be used in evidence along with other evidence as a guide to the jury in determining what is a reasonable compensation.

3. BROKERS—*Commissions—Interest.*—Where a broker is entitled to recover commission on a sale made by him, he is also entitled to interest thereon from the time the commission was payable.

4. BROKERS—*Commissions—Purchaser Accepted at Reduced Price.*—Where an agent contracts to furnish a purchaser for land at a stipulated price, and such agent does furnish a purchaser, whom the owner accepts, and, in the negotiation of the transaction, the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, still such agent is entitled to his commission, or to such compensation for his services as is reasonable, fair, and just, under all the facts and circumstances. A different rule prevails where the purchaser is rejected on account of variation from price or terms prescribed.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

And the court, upon request of plaintiff, or upon its own motion, gave the following instructions—to-wit:

(A) "If the jury believe from the evidence (1) that the de-

fendants employed the plaintiff, Gilliss, to sell the timber on the Lofton tract; (2) that the plaintiff, Gilliss, brought the said property to the attention of Mr. and Mrs. Johnson; (3) that the defendants, in the absence of the plaintiff (Gilliss), attempted to sell said property to the said Johnsons; (4) that the said Johnsons told the defendants that the plaintiff, Gilliss, had informed them (the said Johnsons) that he (Gilliss) thought the aforesaid tract of land contained not more than ninety million feet of timber; (5) that the said Johnsons also told the defendants that they (the said Johnsons) were unwilling to pay more than two dollars a thousand feet, based on the aforesaid estimate of the plaintiff, Gilliss, or a total sum of one hundred and eighty thousand dollars; (6) that the said Johnsons offered the defendants the sum of one hundred and eighty thousand dollars for the aforesaid timber, and informed the defendants that the amount of said offer was calculated by allowing two dollars a thousand feet for the quantity of timber stated in the aforesaid estimate of the plaintiff, Gilliss; (7) that, after receiving the aforesaid information, the defendants accepted the aforesaid offer of the said Johnsons, and sold and conveyed said property to said Johnsons; (8) that the plaintiff, Gilliss, although absent at the time such sale was actually made, had originally brought said property to the attention of said Johnsons, and was the procuring cause of said sale; then the court instructs the jury that, even though they may believe from the evidence that the plaintiff, Gilliss, had not been authorized to sell said property for any sum less than two hundred thousand dollars, nevertheless, the plaintiff, Gilliss, is entitled to recover from the defendants, unless the jury believe it is shown, by a preponderance of the evidence, to the satisfaction of the jury, that, prior to the aforesaid sale, the plaintiff, Gilliss, informed the defendant, Paschall, expressly or in substance, that he (Gilliss) abandoned the aforesaid employment by the defendants to sell said timber for them, or unless the jury believe from the evidence that Gilliss, although claiming to act for Paschall & Gresham, was the actual representative of Mr. and Mrs. Johnson."

(B) "That the plaintiff was the procuring cause of said sale if said sale was brought about by the plaintiff's exertions in present-

ing the property to the attention of the purchasers, or by his introducing the purchasers to the defendants, or by his giving to the defendants as possible purchasers the names of the said Mrs. Jessie C. Johnson and Ira Johnson."

(C) "That if the jury believe from the evidence that the plaintiff was authorized or requested by the defendants to sell the Lofton tract for them, and that, pursuant thereto, the plaintiff brought the property to the attention of the purchasers, Mr. and Mrs. Johnson, and was the means of putting the defendants into communication with them, then the jury are instructed that it was not necessary that the plaintiff should have personally participated in the actual negotiations which ended in the sale, and his right to recover commissions cannot be defeated because of his failure to personally participate in said negotiations."

(D) "If the jury find for the plaintiff, Gilliss, they should award him the principal sum of nine thousand dollars, and should state in their verdict that the said sum is to bear interest from September 10, 1909."

(E) "The court instructs the jury that even though they believe from the evidence that at one time J. I. Gilliss, the plaintiff in this case, had a contract with the defendants for the sale of their property, known as the Lofton tract, nevertheless, if they believe from the evidence that the plaintiff abandoned the said contract and ceased in his efforts to sell the same, and informed Mr. Paschall, expressly or in substance, that he (Gilliss) abandoned the employment by the defendants to sell the Lofton timber for them to Mr. and Mrs. Johnson, they must find for the defendants."

(F) "The court instructs the jury that if they believe from the evidence that said J. I. Gilliss, while claiming to represent the said Paschall & Gresham, the defendants in this case, was actually representing Mr. and Mrs. Johnson, the purchasers of said timber, they must find for the defendants. But the fact that Gilliss was the estimator and agent of the Greenleaf Johnson Company, a corporation in which Mrs. Johnson and her son were stockholders, would not constitute Gilliss as personally representing Mr. and Mrs. Johnson as the purchasers of said timber in the meaning of these instructions; for, to defeat the claim of Gilliss to his commissions on this ground, the jury must be satisfied from the prepon-

derance of the evidence, either direct or circumstantial, that Gilliss was actually the personal representative of Mr. and Mrs. Johnson in the transaction of the negotiations for the sale of the timber, although claiming to represent Paschall & Gresham."

*Williams & Mullin*, for the plaintiffs in error.

*Braxton & Eggleston* and *R. W. Tomlin*, for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This action of *assumpsit* was brought by the plaintiff, J. I. Gilliss, to recover of the defendants, J. R. Paschall and Thomas Gresham, partners in business under the firm name of Paschall & Gresham, commissions alleged to be due the plaintiff upon a sale alleged to have been made by him, or through his instrumentality, of a certain tract of timbered land belonging to the defendants. The declaration filed contains a special count and also the common counts in *assumpsit*, to which the defendants pleaded the general issue of *non-assumpsit*, and to a judgment for $9,000, in favor of the plaintiff, this writ of error was awarded.

The material facts in the case are as follows: In May, 1909, the defendants were the owners of a certain tract of timbered land, situated in Charleston county, South Carolina, containing about 10,000 acres, and known as the "Lofton tract." At that time the defendants were engaged in negotiating with one Boice and associates, of Asheville, N. C., for the sale of said land and timber, and, at the request of Boice, Paschall employed for Boice and associates Gilliss, who was a resident of Norfolk, Va., to estimate said tract of timber. Boice met Gilliss in Charleston, and took him upon the property, where he instructed Gilliss to make and furnish him (Boice) an estimate of the standing timber thereon. After remaining on the land for a week or more, Gilliss went to Savannah, and furnished Boice a written estimate of said timber, putting it at 112,000,000 feet.

Gilliss, being impressed with the fine quality of the timber, asked Paschall, if, for any reason, Boice did not buy it, to let him (Gilliss)

try to sell it, and inquired upon what price he would allow him a commission; to which Paschall replied that, if the pending deal did not go through, he would let him (Gilliss) make an attempt to sell it, and, in the event of a sale at the price of $200,000, his commission should be five *per cent.* Boice and associates were unable to make their financial arrangements to purchase the property, and about the first of July, 1909, Gilliss asked Paschall to meet, in Suffolk, Va., one W. B. Phillips, with a view of a sale to him, but Phillips wanted an option on the property at $180,000, which Paschall refused to give, nor would he lower his price of $200,000, and thereupon the negotiations with Phillips also terminated.

About the middle of August, 1909, Gilliss asked Paschall to put in writing their agreement, and, in compliance with this request, Paschall, on August 14, 1909, wrote Gillis a letter in which he said: "Confirming my conversation with you, I hereby agree to pay you five *per cent.* commission for the sale of the tract of timber known as the 'Lofton tract,' for the price of $200,000. Your commissions to be paid at such time and in such manner as I receive the money from said sale. I am at Ocean View Hotel, and would like to see you. If this letter reaches you in time, please call me about 7 o'clock this P. M., and I will come up to Norfolk to see you." ·

Gilliss was, and had been for twelve or more years, in the employ of the Greenleaf Johnson Lumber Co., of Norfolk, Va., as its timber estimator and buyer, which corporation was owned or controlled by a Mrs. J. C. Johnson and her son, Ira Johnson, both of Baltimore, Md., she being the secretary and treasurer and he the general manager of the company. Soon after Gilliss received the above-mentioned letter from Paschall, Mrs. Johnson wrote Paschall, whom she knew, and had had business transactions with for several years, stating that she had understood this (the "Lofton tract") to be a very fine body of timber, and requesting Paschall to come to see her about purchasing it. Prior to this Gilliss had taken up with Mrs. Johnson the question of her purchasing the said tract of timber, advising her that it was for her interest to buy it, and had written her letters with respect to the timber.

Paschall, upon being requested to do so by Mrs. Johnson, went at the end of August, 1909, to Baltimore, to see her, stating to her there were 112,000,000 or 120,000,000 feet of timber on the property, and that his price was $200,000. Mrs. Johnson was interested in the property, saying she was willing to purchase it if the timber proved as fine quality as represented, and that she would send her son (Ira Johnson) and Gilliss to look at the timber at an early date. She did not, it seems, at that time, raise any question about the price or the estimate of the timber, or disclose to Paschall any information that had been furnished her by Gilliss or any one as to the quantity of timber upon the land.

During the first week in September following, Mrs. Johnson sent her son and Gilliss down to look at the property, and, after spending a day or two upon it, Ira Johnson returned to Baltimore, and Paschall, who had met Johnson and Gilliss in South Carolina, went to Atlanta, Ga. Paschall states that he first told Gilliss of his intention to go to Baltimore the next week to close the transaction with the Johnsons, and requested Gilliss to accompany him for that purpose; that Gilliss notified him (Paschall) that he did not wish to have anything to do with the transaction, and was through with it, and that Gilliss got out of reach, and kept out, until he (Paschall) went to Baltimore; but this statement was flatly contradicted by the plaintiff, Gilliss. At all events, Paschall and Gresham went to Baltimore on September 8, 1909, for the purpose of closing up the transaction at the price they had named, $200,-000, as they (according to their version of what had transpired) understood that the quality of the timber had shown up all right; but, as they claim, were there (in the absence of the plaintiff, Gilliss) told by the Johnsons that they would only give $180,000 for the timber, for the reason that Gilliss had advised them that there were only from 85,000,000 to 90,000,000 feet of timber on the property, and that $2.00 per 1,000 feet was the best price that could be given by them for that timber, and that they would not give any more, because of said estimate. Paschall and Gresham then refused to sell at the price offered by the Johnsons, and returned to their hotel, and endeavored (as they say) to get into communication with Gilliss over the long distance telephone, to notify him of the situation, and that he had not produced a purchaser

according to his contract, but found that Gilliss was out of Norfolk, and could not be reached. That night, however, Paschall and Gresham, still in the absence of and without communication with Gilliss, traded said property to the Johnsons at a valuation of $180,000, receiving from them a satisfactory settlement of the purchase price agreed upon. Gilliss knew nothing of the price for which the property was actually sold until the sale had been consummated, and Paschall wrote him as to what had occurred and claimed that he was entitled to no commission on the sale. Gilliss also flatly denies that he made the statements and estimate which Paschall claims that Mrs. Johnson used in inducing the defendants to take a less price for the property than that originally fixed upon it by them.

There is no room to question that the plaintiff, Gilliss, pursuant to his contract with the defendants, was the "efficient" or "procuring" cause of the consummated sale of the property to the Johnsons. Indeed, there is practically no conflicting testimony on this point; and the contention that the plaintiff abandoned his employment to find a purchaser of the property before the sale thereof was consummated by the defendants is equally groundless.

The contention of the defendants is that the letter of August 14, 1909, evidences the contract between them and the plaintiff, and provides, in effect, that the plaintiff was to receive no commission or compensation, even though the property was actually sold, because the sale was not at the price of $200,000, but at the price of $180,000. On the other hand, the plaintiff contends that as he procured the purchasers of the property, ready and willing to purchase, and the defendants accepted said purchasers and concluded a sale of the property to them, though at a less price than $200,000, he, the plaintiff, is entitled to the stipulated commission of five *per cent.* on the price agreed upon and received by the defendants from said sale.

The question as to bad faith on the part of the plaintiff, urged by the defendants, was one of fact, fairly to be submitted to the jury, which was done, and was determined by the jury adversely to the defendants' contention, and need not be here further considered.

The first assignment of error by the defendants is to the refusal

82

of the court to exclude from the jury all evidence introduced by the plaintiff to prove a claim under the common counts, or *quantum meruit,* in his declaration.

We do not see any merit in this assignment of error. The action is to recover compensation earned and due for services that had been rendered, and the declaration was so framed, and in accordance with a common practice in such cases, as to support a recovery in favor of the plaintiff for the price and value of the work he had done, either upon the theory that the money was due on an express contract, or on an implied contract. *Brown & Rives* v. *Ralston, &c.,* 9 Leigh (36 Va.) 532; 4 Minor (3d ed.), 695, 699–700.

Moreover, the express contract alleged provided for a commission of five *per cent.*, and the verdict and judgment below was for the amount of five *per cent.* of the price ($180,000) at which the property was sold, and every witness testifying as to the value of the plaintiff's services stated that the value of the services was at least equal to the amount at which the jury fixed it—none put it at less, and some put it higher.

In *Smith* v. *Sharp*, 162 Ala. 433, 50 So. 381, 136 Am. St. Rep. 52, a case very similar to the case at bar, the contract of employment was written and under seal, giving the broker or agent the exclusive right to sell the land within a given time, at a fixed price per acre, and fixed the pay of the agent for making the sale. The agent, as in this case, introduced to the owners of the land a prospective purchaser, and the owners, conducting the negotiations for themselves, concluded a sale of the land to the said purchaser for a less consideration than that fixed in the agreement with the agent authorized to sell the land; and the court, after determining that Smith, the agent, upon the facts of the case, was entitled to some compensation, held that the written contract of employment was competent evidence to be introduced "as a guide for the jury in arriving at what is reasonable compensation"; in other words, the court held that, while the agent, Smith, was not entitled to recover compensation by reason of his express employment in writing by the owners of the property, he was entitled to recover, upon a *quantum meruit,* the value of his services, and that the express contract was competent evidence to be considered

by the jury, along with all other evidence, as a guide in arriving at what was reasonable compensation for services of the kind rendered, and as an indication of what the parties considered would be reasonable. *Smith* v. *Packard,* 94 Va. 733, 27 S. E. 586, and authorities cited.

On September 9, 1909, Paschall wrote the plaintiff, Gilliss, that the "Lofton tract" had been sold, but he (Gilliss) would receive no commission. If, therefore, the plaintiff was entitled to a commission on said sale at all, a right of action therefor accrued to him when defendants denied that right, and we are unable to see any force whatever in the defendants' contention that it was error to allow the plaintiff interest on the amount of the jury's verdict in his favor from September 10, 1909, instead of, if at all, from a later date.

We do not deem it necessary to consider *seriatim* the instructions to the jury given by the trial court (which are set out with the official report of this opinion) or those refused. The six instructions asked by the plaintiff and given, and the one asked by the defendants, amended and given, correctly propounded the law applicable to the facts which the evidence in the case tended to prove, and submitted fully and fairly each and every phase thereof to the jury. They proceed upon the theory that, as a matter of law, where an agent contracts to furnish a purchaser for lands at a stipulated price, and such agent does furnish a purchaser, whom the owner accepts, and, in the negotiation of the transaction, the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, still such agent would be entitled to his commission, or to such compensation for his services as would be reasonable, fair, and just, under all the facts and circumstances of the case.

The cases cited for the defendants, seemingly supporting the converse of the proposition, are *Crockett* v. *Grayson,* 98 Va. 357, 36 S. E. 477, citing *McGavock* v. *Woodlief,* 20 How. 221, 15 L. Ed. 884, belong to the class of cases in which no sale was made, cases in which the broker secured an offer of a price or on terms other than his employment stipulated, which offer his employer rejected, and in which cases the court, in denying the right of the broker to compensation, said that the broker was required to produce

a purchaser who was ready, willing, and able to purchase, at the price and on the terms prescribed by the principal. In the case here the property was actually sold, conveyed, and paid for.

. The distinction between the authorities supporting the propositions of law propounded by the court's instructions and those relied on by the defendants is very clearly stated in *Coleman* v. *Meade*, 13 Bush. (Ky.) 358, as follows: "The true doctrine we take to be this: The broker undertakes to furnish a purchaser, and is bound to act in good faith in presenting a person as such, and, when one is presented, the employer is not bound to accept him or to pay the commission, unless he is ready and able to perform the contract on his part according to the terms proposed; but, if the principal accepts him, either upon the terms previously proposed, or upon modified terms then agreed upon, and a valid contract is entered into between the principal and the person presented by the broker, the commission is earned. But if, as was the case in *McGavock* v. *Woodlief*, 20 How. 221, 15 L. Ed. 884, the principal rejects the purchaser, and the broker claims his commission, he must show not only that the person furnished was willing to accept the offer precisely as made, but, in addition, that he was an eligible purchaser, and such as the principal was bound, as between himself and the broker, to accept."

. In *Arents* v. *Casselman*, 110 Va. 509, 66 S. E. 820, Thomas F. Jeffress, agent for the defendant, George Arents, requested, in writing, the real estate firm of Casselman & Co., composed of J. R. Hockaday and Laurence Casselman, to "please list for sale" the farm of the defendant, Arents, in Henrico county, Va., known as "Bloomingdale," containing 280 acres, "for $50,000." After describing the farm, the said writing continued: "My price is fifty thousand ($50,000) dollars, $20,000 of said amount I want in cash, and the balance on one and two years. Now, if this property is sold by you, or through your instrumentality, I will pay you three (3) *per cent.* commission, to be taken out of the cash payment." The Bloomingdale farm was sold by Arents' agent to a purchaser, procured through the instrumentality of Casselman, for $30,000, instead of $50,000, and the cash payment was only $5,000, instead of $20,000. After the firm of Casselman & Co. was authorized, as stated, to find a

purchaser for Bloomingdale, and before said sale thereof was made, J. R. Hockaday withdrew from said firm, and Casselman continued business under the same firm name; so that in the suit of Casselman against Arents, to recover his commission on said sale, one of the questions involved was whether said contract, originally made with the firm of Casselman & Co., as then constituted, continued in force after Hockaday's retirement, and became a contract between the new firm and the defendant, Arents; but with that question we have no concern here, except in so far as the statement of the fact will serve to make more intelligible the instruction in the case, to which we will now advert.

In dealing with instruction No. 1, given to the jury in that case, for the plaintiff, over the objection of the defendant, this court said it was "free from reasonable objection." It told the jury that, if they believed from the evidence that the aforesaid contract with Hockaday, Casselman & Co., was continued in force so as to become a contract with the new firm aforesaid, "and that thereby the plaintiffs were authorized to sell said farm under the contract with Hockaday, Casselman & Co., you must find for the plaintiffs, if you believe from the evidence they sold, or were instrumental in selling, to W. R. Smith, as a purchaser of said farm, and that he actually purchased the same, even though you believe from the evidence the said Jeffress closed with said purchaser at the reduced price of $30,000."

In that case the verdict and judgment were for three *per cent.* commissions in favor of the plaintiff on $30,000, the amount for which Bloomingdale farm was actually sold, which judgment this court affirmed.

The same principle is recognized and approved in *Ice* v. *Maxwell*, 61 W. Va. 9, 55 S. E. 899, cited in *Arents* v. *Casselman* with approval. The material facts in the case were very similar to facts in this case, and the opinion of the court discusses fully the principles of law applicable to the facts, citing a great number of authorities, and affirms the judgment of the trial court in favor of the broker or agent for the commission claimed by him on the amount of the sale of the property as actually made by the owner.

In *Hovey* v. *Aaron*, 133 Mo. App. 573, 113 S. W. 718, the defendant sought to maintain the principle of law contended for

by the defendants in this case, and in holding that instructions sanctioning the principle were erroneous, and that the plaintiffs were entitled to a recovery, the opinion of the court said: "The principle of law declared in all these instructions is not supported either upon reason or the weight of authority. * * * On the hypothesis of fact that Braley was not willing to buy at the price plaintiffs were authorized to offer, but for $1,000 less, it would result in the grossest injustice should we say, as was said in the instructions under consideration, that such fact would preclude a recovery by the plaintiffs. If defendant, while plaintiffs' authority to sell stood unrevoked, chose to sell the property, either in person or through another agent, to a customer procured by the efforts of plaintiffs, for a less price than that which plaintiffs were authorized to offer, that was his privilege,. but he will not be permitted to reap the fruits of plaintiffs' labor, and then deny them their just reward." See also *Glade* v. *Mining Co.*, 129 Mo. App. 443, 107 S. W. 1002; *Hogan* v. *Slade*, 98 Mo. App. 44, 71 S. W. 1104, and cases cited; *Kock* v. *Emmerling*, 22 How. 72, 16 L. Ed, 292; *Garnes* v. *Finnigan*, 198 Mass. 128, 84 N. E. 324; *Dexter* v. *Campbell*, 137 Mass. 198; *Henry* v. *Stewart*, 185 Ill. 448, 57 N. E. 190; *Haffner* v. *Herron*, 165 Ill. 242, 46 N. E. 211, and cases cited; *Hubercheck* v. *Hazzard*, 83 Minn. 437, 86 N. W. 426.

In *Lawson* v. *Black, &c. Co.*, 53 Wash. 614, 102 Pac. 759, the court said: "It is not disputed that the appellant actually agreed to pay five *per cent.* on $1,500,000 in the event of a sale at that price. When it afterwards voluntarily reduced the selling price, the respondents were entitled to a ratable commission on such reduced price. In *Martin* v. *Silliman*, 53 N. Y. 615, the second syllabus reads as follows: 'Where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened a negotiation with a purchaser, and the principal, without terminating the agency or the negotiations so commenced, takes it into his own hands, and concludes a sale for a less sum than the price fixed, the broker is entitled, at least, to a ratable proportion of the agreed commission.' "

The following cases are also in point: *Morris* v. *Francis*, 75 Kan. 580, 89 Pac. 901; *Jones* v. *Adler*, 34 Md. 440; *Pierce* v. *Nichols*, 50 Tex. Civ. App. 443, 110 S. W. 206; *Hoadley* v. *Savings*

*Bank,* 71 Conn. 640, 42 Atl. 667; *Welch* v. *Young* (Iowa), 79 S. W. 59; *Levy* v. *Wolf,* Cal. App. 491, 84 Pac. 313; *Keys* v. *Johnson,* 68 Pa. 42.

In the last named case the court, after showing, by the great weight of authority, the right of the broker or agent to the compensation he claimed, upon a state of facts similar to those in the case we have under consideration, said, in its opinion *inter alia* "If 'vendors were permitted,' said Woodruff, J., 'to employ brokers to look up purchasers, and call the attention of buyers to property which they desired to sell, limiting them as to terms of sale, and then, when such purchasers were negotiating, take the matter in their own hands, avail themselves of the labor, services, and expenses of the broker in bringing the property into market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing; gross injustice would be done; every unfair and illiberal vendor would limit his property at a price slightly above the market, and make use of the broker to bring it into notice, and then make his own terms with the buyers, who were in reality procured by the efforts of the agent.' "

The case of *Long* v. *Flory and Garber,* 112 Va. 721, 72 S. E. 723, recently decided by this court, was very different from the case we now have in hand. In the former case the contract between the owner and the agent fixed a minimum price at which the property was to be sold, and the agent failed to find a purchaser or to effect a sale at the stipulated price; moreover, there was no evidence tending to prove that the principal had wrongfully prevented the agent from making a sale at such price, or had waived the strict performance of the contract.

Other questions raised in the petition for this writ of error, and argued, we have not discussed, because deemed immaterial, or wholly without merit.

Upon the whole case, we are of opinion that, as the trial court fully, fairly, and correctly instructed the jury as to the law, upon every phase thereof presented in the pleadings and evidence, it did not err in refusing the instructions asked for by the defendants which were rejected, and that the evidence was ample to sustain the jury's verdict. Therefore, the judgment upon the verdict is affirmed.                                              *Affirmed.*