## LAND CO. OF FLORIDA v. FETTY.

(Circuit Court of Appeals, Fifth Circuit. November 24, 1926.)

No. 4901.

**1. Pleading ⬅236(3)—Trial amendment is for sound discretion of court.**

Whether to allow trial amendment is within sound discretion of court.

**2. Evidence ⬅29—Federal courts take notice of general state statutes.**

Notice of state statutes of general nature is taken by federal courts.

**3. Statutes ⬅241(1)—Highly penal statute is strictly construed.**

A statute, being highly penal, is to be strictly construed.

**4. Brokers ⬅42—Statute as to license for real estate broker held, relative to recovery of promised commission, not to apply to lumberman engaged to find purchaser for lot of standing timber; "as a whole or partial vocation" (Laws Fla. 1923, c. 9177).**

Laws Fla. 1923, c. 9177, defining real estate broker, required to first obtain license, as a person who does any of certain things "as a whole or partial vocation," and declaring one act sufficient to constitute him such broker *held* to apply to persons holding themselves out to the public as real estate brokers, and not to apply to a person specially employed for a single transaction, as a Georgia lumberman engaged to find a purchaser for a lot of standing timber in Florida, without authority to sell it, relative to right to recover promised commission therefor.

**5. Brokers ⬅7—Contract of employment in Georgia to find purchaser for standing timber in Florida held not governed by Florida laws.**

Contract of employment in Georgia of plaintiff merely to find a purchaser for defendant's standing timber in Florida, plaintiff, by telephoning from Georgia, getting in touch with customer in Florida, who came to Georgia, and there was introduced to defendant, who made the sale, *held* not governed by laws of Florida.

**6. Brokers ⬅54—Payment of commission of one employed merely to find buyer, and not to sell, could not be postponed by terms of sale.**

Person being employed merely to find a buyer ready, able, and willing to buy standing timber, and not to sell, payment of his commission could not be postponed by terms of sale.

**7. Appeal and error ⬅1033(5)—Defendant in action for commissions held not entitled to complain of instruction for interest at legal rate in state of contract, from date of demand.**

Instruction in action for commissions under Georgia contract for finding purchaser for timber in Florida, authorizing interest at the legal rate in Georgia from date of demand, *held* not open to complaint by defendant.

In Error to the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Action by I. H. Fetty against the Land Company of Florida. Judgment for plaintiff, and defendant brings error. Affirmed.

J. R. Anderson and Samuel B. Adams, both of Savannah, Ga. (Anderson, Cann & Cann and Adams & Adams, all of Savannah, Ga., on the brief), for plaintiff in error.

Robert M. Hitch, Remer L. Denmark, and A. B. Lovett, all of Savannah, Ga. (Hitch, Denmark & Lovett, of Savannah, Ga., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Defendant in error, plaintiff below, filed his suit against the plaintiff in error, defendant below, to recover $77,625, on a cause of action that is best shown by a brief statement of the pleadings. The parties will hereafter be referred to as they appeared in the District Court.

The petition alleges in substance that plaintiff, a resident of Savannah, Ga., had been engaged in the lumber business for some 25 years, and was familiar with and experienced in the handling of timber properties; that defendant was the owner of approximately 160,000 acres of timbered land in Florida, and was without any experience in handling or selling such property; that defendant consulted plaintiff regarding the best method of disposing of the timber on said land, and employed him to find a purchaser for it, agreeing to pay him 5 per cent. on the

total value of the timber sold, but without authorizing him to sell at any stated price; that plaintiff found a purchaser in the person of one E. T. Roux, and introduced him to C. S. Ucker, defendant's vice president; that Roux was ready, able, and willing to purchase said property and after negotiations agreed to buy the same at the price stipulated by defendant, to wit, $6 per thousand feet, board measure or mill cut; that, by mutual agreement between Roux and defendant, a corporation, known as the Indian Lumber Company, was organized by Roux and substituted for him as purchaser, and the sale was consummated; that the timber on the said lands would yield with proper management 258,-750,000 feet of lumber, board measure or mill cut, and at the rate of $6 per thousand feet would aggregate in value $1,552,500; that, on the sale, plaintiff was entitled to his commission of 5 per cent., aggregating $77,625. The petition also alleges demand and refusal to pay. Defendant filed demurrers and an answer, denied the making of the contract as alleged by defendant, denied that the Indian Lumber Company was organized as alleged, and denied that Roux had any interest in said company.

The demurrers were overruled, and the case was tried to a jury. At the trial, when plaintiff had about completed his evidence, defendant offered a trial amendment, setting up that the contract sued on was made in the state of Florida, and that by an act of the Florida Legislature, of June 7, 1923, plaintiff was required to obtain a license in Florida as a real estate broker, and had not done so, and therefore could not recover the commissions claimed in this case. The court declined to allow this amendment, and the trial was proceeded with, resulting in a verdict for plaintiff for the full amount claimed, with interest at 7 per cent. from July 3, 1925, upon which judgment was entered.

There are 16 assignments of error. The first assignment runs to the refusal of the court to permit the trial amendment. The second assignment raises the question as to the Florida statute on the denial of a motion to direct a verdict, and the third assignment presents the same question on the refusal of a special charge. These assignments may be treated together.

[1, 2] It is well settled that the allowance of a trial amendment is within the sound discretion of the court; but, as federal courts take notice of the statutes of all the states of a general nature, the first assignment is comparatively unimportant. The statute of Florida (Act June 7, 1923 [Laws 1923, c. 9177]), so far as it could have any application to this case, may be epitomized as follows:

Section 1 provides it shall be unlawful for any person from and after September 30, 1923, to engage in the business, or act in the capacity, either directly or indirectly, of a real estate broker within the state of Florida, without first obtaining a license under the provisions of the act.

Section 2, as applied to an individual, and omitting transactions other than sales, defines a real estate broker as follows: A real estate broker, within the meaning of this act, is any person, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale of real estate for others, as a whole or partial vocation. One act for a compensation of buying or selling real estate of or for another, or offering for another to buy or sell real estate, shall constitute the person performing, or attempting to perform, any of the said acts, a real estate broker within the meaning of the act. By its terms the act does not apply to any person, or his regular employees, dealing with his own property, nor to an attorney at law acting as such, nor to one acting under a duly executed power of attorney.

Section 3 provides licenses shall be granted only to persons who are trustworthy, and bear a good reputation for honesty and fair dealing, and are competent to transact the business of a broker in such manner as to safeguard the interests of the public.

Sections 4 and 5 deal with the application for a broker's license and the issuing of same by the county judge.

Section 6 provides a license fee of $10 for each broker.

Section 7 makes it a misdemeanor for any real estate broker to make any false promises or misrepresentations to induce a sale, to act for more than one party in a transaction, to fail to account for or remit any moneys coming into his possession belonging to any other, or to engage in the real estate business without paying the license fee lawfully required of him by any governmental authority, or whose conduct constitutes dishonest dealings, and imposes a penalty on conviction of a fine of not more than $1,000, or imprisonment for not more than six months, or both.

The remaining sections of the act are immaterial to this case.

[3, 4] It is contended by defendant that the statute is not a revenue measure, and is to protect the public; therefore plaintiff is not entitled to recover his fees, because he did not procure a license. There is considerable

respectable authority to support this contention, but in our opinion it is beside the issues in this case.

Plaintiff was not authorized to either buy or sell the property in question, and did not pretend to submit an offer from the seller to the buyer, or conversely. His contract with defendant, as shown by the pleadings and the evidence, was merely to find a purchaser and put the parties in touch, leaving the sale to be consummated by the principals. The statute is highly penal, and therefore to be strictly construed. If it were not for the provision of the law making one transaction the doing of business, it could not be said that making one sale would be a violation, and that provision must be construed with the phrase "as a whole or partial vocation." So construed, it is clear that the act was intended to apply to persons holding themselves out to the public as real estate brokers, and not to require every person specially employed for a specific transaction to take out a license, under pain of incurring severe penalties and loss of commissions. What the plaintiff did would not constitute him a broker, within the meaning of the law.

[5] Furthermore, there is evidence tending to show the following facts: Plaintiff was first approached by defendant as a prospective purchaser in Savannah, Ga., and, after stating that he was not interested in buying, was employed to find a purchaser. Nothing was said at that time about the price of the property or the amount of the commission to be paid. Subsequently plaintiff made a trip to Florida and inspected the land, and gave advice as to the price that ought to be asked for the land and the terms and method of making the sale. At that time, in Florida, it was agreed by Ucker, representing the defendant, that a commission of 5 per cent. would be paid to plaintiff. This was afterwards confirmed by Warfield, the president of defendant, in Baltimore, Md. Plaintiff got in touch with Roux, who lived in Florida, by telephone from Savannah, and Roux came to Savannah as an interested, prospective purchaser. It was in Savannah that Roux was first introduced to Ucker.

When plaintiff procured a purchaser ready, able, and willing to buy, he had complied with his contract. McGavock v. Woodlief, 20 How. 221, 15 L. Ed. 884. In view of the facts, we do not think the contract of employment between plaintiff and defendant could be considered as governed by the laws of Florida.

[6] By the fourth to eighth assignments of error, inclusive, the following points are raised: That the contract covered the timber on 160,000 acres, and, as timber on some 50,-000 acres was never sold, the contract was not carried out; that the contract with the Indian Lumber Company provided that the purchase price was to be paid as the cutting was done, and plaintiff could only recover commissions on what had been actually cut and paid for; that this amount had not been definitely ascertained; that at the time the suit was filed it was premature; that there was not sufficient evidence to show that Roux was able, ready, and willing to buy on the terms stipulated by defendant and actually offered to buy.

These were all questions for the jury under proper instructions; and it may be said that these assignments overlook the theory upon which the suit was brought and submitted. By the terms of the contract plaintiff was not employed to actually make a sale, but to merely find a buyer, who was ready, able, and willing to buy. When he did that he complied with his agreement, and payment of his commission could not be postponed by the terms of the sale. McGavock v. Woodlief, supra. There could be no doubt that there was sufficient evidence before the jury to substantiate the allegations of the petition.

The ninth, tenth, and eleventh assignments run to certain portions of the charge given. It is sufficient to say that the court charged the jury clearly and fully on the law applicable to the case. We find no error in that respect.

[7] The twelfth assignment is that the court erred in charging the jury as follows:

"You will write as I say, gentlemen of the jury, if you write your verdict in behalf of the plaintiff, interest from the 3d day of July, 1925, at the rate of 7 per cent. per annum."

Plaintiff had prayed for interest from May 2d, 1925, the date the sale to the Indian Lumber Company was made, but the demand for payment by plaintiff was not made until the 3d of July. As 7 per cent. is the legal rate of interest in Georgia, there is no error of which defendant could complain in the matter of interest.

The thirteenth to sixteenth assignments of error, inclusive, merely set up that the verdict is illegal, because without evidence to support it, and they require no further comment.

We find no error in the record.

Affirmed.