JESSE KETCHAM, Appellant, v. JOHN F. AXELSON, Appellee.

Agency: COMMISSION CONTRACTS: RIGHTS OF AGENT. Where an agent contracts to procure a purchaser for the property of his principal on terms satisfactory to him, and produces one who is ready, able and willing to purchase on such terms, and with whom his principal enters into an enforceable contract, the agent is entitled to his commission, even though the contract is afterwards canceled by the principal without the consent of the agent. And even though the contract contains a provision authorizing the principal to cancel the same within a certain time, and he elects to exercise the option, the agent is still entitled to his commission. He would also be entitled to his commission although the principal

was unable to convey title, and for that reason the contract of
sale was never performed.

**Same:** CONTRACT TO PROCURE PURCHASER: BURDEN OF PROOF. Where
2  an agent is employed to produce a purchaser on terms satisfactory
to his principal, and the principal concludes an enforceable con-
tract with a purchaser thus produced, the commission is then
earned, in the absence of any showing of bad faith on the part of
the agent; and in a suit to recover his commission he is not required
to prove that the party produced by him was not only ready and
willing to buy, but was able to perform the contract as well.

*Appeal from Jefferson District Court.*—HON. F. M. HUNTER,
Judge.


SATURDAY, JUNE 7, 1913.


ACTION to recover commission for sale of real estate.
Opinion states the facts. Trial to a jury. At the conclusion
of plaintiff's testimony, the court directed a verdict for the
defendant. Plaintiff appeals.—*Reversed.*

*Ralph H. Munro,* for appellant.

*J. P. Starr,* for appellee.


GAYNOR, J.—The plaintiff contends that he entered into
an oral contract with the defendant by which the defendant
agreed to pay the plaintiff the sum of $170 if the plaintiff
would secure for him a party who would exchange property
with the defendant at such figure as would be satisfactory to
the defendant; that, if the plaintiff procured a purchaser for
defendant's land for cash, on terms satisfactory to the de-
fendant, the defendant would pay the plaintiff $340. Plaintiff
claims that he secured a purchaser for the defendant's farm
in the person of one J. D. Parsons, who entered into a written
contract with the defendant for the purchase of said land,
and subsequently purchased the land from the defendant,

and had the title conveyed to the Burlington Building Company, of which the said Parsons was president. The defendant denies that he entered into a contract with the plaintiff as claimed; denies that plaintiff procured him a purchaser for said land. The case was tried to a jury, and at the conclusion of plaintiff's testimony the court, on the motion of the defendant, instructed the jury to return a verdict against the plaintiff in favor of the defendant. Judgment was thereupon entered upon the verdict, and from this judgment the plaintiff appeals. The only contention on the part of appellant is that the court erred in sustaining the motion and directing a verdict against him, and in dismissing plaintiff's cause of action.

A proper determination of this case requires an examination of the entire evidence offered and received, and upon which the court acted in directing a verdict for the defendant.

It appears from the evidence that on September 15, 1909, defendant, by written contract, purchased from one I. T. and E. S. Pogue their farm of 339¾ acres for the sum of $10,000, to be paid in the following manner: $500 to be paid upon the execution of the contract; a bankable note for $500 payable March 4, 1910, without interest until due; the remaining $9,000 to be paid as follows: Second party, defendant herein, to assume the mortgage on the land of $5,000, part purchase money; the remaining $4,000 to be paid March 4, 1910, at which time the first party agreed to execute and deliver to the second party a good and sufficient warranty deed.

It appears that the purchase by the defendant of this property was made through the instrumentality of the plaintiff. Plaintiff testifies that when the defendant was negotiating for the purchase of this land he had a talk with the defendant, and the defendant told him to get the land for him, even if he had to cut his commission to do so. He said: "If you get the land for me, I will give you the sale of the farm exclusively until the 1st day of March, 1910, and will

give you a good commission.'' Plaintiff testifies: That after
the purchase of the farm by the defendant, and after this
conversation had with the defendant, he went to Burlington
and looked around for a deal. Found Mr. Parsons, who was
ready to trade for this farm. This was some time about the
1st of November, 1909.

After I had talked with Parsons, I came up and sub-
mitted the proposition to the defendant, and then the defend-
ant went to Burlington to look the proposition over. Then
Mr. Parsons came up and brought a man with him. The
defendant and I and Parsons went down and looked the farm
over. Parsons made a written statement that he would trade
so and so with defendant, and that he would give him the
Burlington property, but Mr. Parsons requested that the land
be surveyed so that he would know his exact lines, and refused
to proceed further in the deal until the lines were fixed. Said
he wouldn't sign any contract until the land was surveyed.
After that we had the land surveyed. I went down there with
the surveyor. We were two days completing the survey. The
surveyor figured out three acres more than the defendant
claimed before, and then he wrote the purchaser and proposed
raising his price $500, and then it ran along for some time,
and was finally settled in February, I think. On or about the
15th of November I had a further conversation with the
plaintiff in Fisher's office. He said then that if the deal was
made, or he said, 'If you find a man to trade for it, I will give
you 50 cents an acre. If you find a man who will buy it I will
give you $1.00 an acre.' It was after this conversation that we
went down to Burlington and looked at the property. That is,
the defendant and I. I think I paid the expenses on this
trip. I also paid livery hire when Parsons, defendant, and
I went to look at defendant's farm. Before the contract
was drawn up, Mr. Parsons telephoned me to see the de-
fendant. I came down and notified the defendant that
Parsons wanted to meet him, and he said, 'Yes; I have
a telephone from him.' I asked him if he needed me, and
he said, 'No,' he was going to meet them at the train.
This was the day the contract was drawn up. I met the
defendant either Sunday or Monday after the contract was
drawn and signed. He told me he had signed the contract.

He told me it had a provision in it. He told me he called the contract off with the message, and at the same time told me he had closed another deal. Did not say who the deal was with. Did not tell me who the agents were although I asked him.

Plaintiff further testified on cross-examination: "The contract between Parsons and defendant was finally signed on Saturday. I have no knowledge as to whether he ever attempted to cancel the contract, except what he told me, and I have no means of knowing whether he canceled it or not. I never agreed with the defendant to sell his farm, or to trade the farm. I only agreed to find him a man who would trade for it or buy it."

It appears from the evidence that on the 22d day of January the defendant and J. D. Parsons entered into a contract in writing for the Pogue farm, which the plaintiff claims to have had as agent for the defendant, which reads as follows:

Articles of agreement, made this 22nd day of January in the year of our Lord one thousand nine hundred and ten between John F. Axelson, party of the first part, and J. D. Parsons, party of the second part, witnesseth: That said party of the first part hereby covenants and agrees that if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed (prompt performance of which payments and covenants being a condition precedent, and time being the essence of said condition), the said party of the first part will convey and assure to the party of the second part, in fee simple, clear of all encumbrances whatever, by a good and sufficient warranty deed, the following lot, piece or parcel of ground, viz.: Three hundred thirty-nine and three-quarters acres in sections 28, 32 and 33 Cedar township, Jefferson county, Iowa, known as the Pogue land, with abstract showing merchantable title. And the said party of the second part hereby covenants and agrees to pay the said party of the first part the sum of twenty-two hundred fifty ($2,250.00) dollars, and the further consideration of a war-

ranty deed and abstract showing merchantable title to property Nos. 305, 306½, and 308 and 310 Washington street, Burlington, Iowa, being all the ground from the Elks Building west to the alley and from the north line of Washington street to the Grand Opera House property. Second party further agrees to loan first party $7,500.00 for three years at 6 per cent. semiannual interest, such loan to be made on bond for a deed or on 1st mortgage at time of closing this deal. First party acknowledges receipt of $100.00, cash balance $2,150.00 and deed to said Burlington property to be paid by second party on or before March 1, 1910, on delivery of said deed and abstract to said 339¾ acres and to pay all taxes, assessments or impositions, that may be legally levied or imposed upon said land subsequently to the date hereof. And in case of the failure of the said party of the second part to make either of the payments of principal or interest, or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined on thirty (30) days written notice and a party of the second part shall forfeit all payments made by him on this contract. It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executor, administrators, and assigns of the respective parties. In witness whereof the parties to these presents have hereunto set their hands the day and year first above written. It is understood and agreed that first party may cancel this agreement on or before one o'clock P. M. January 23, 1910, by sending second party notice by telegram to Burlington, Iowa, and returning said payment of $100.00. J. D. Parsons, John F. Axelson. Witnessed J. N. Byrne.

There is no competent evidence in the record that the defendant ever availed himself of the provision in the contract authorizing him to cancel the agreement above set forth. There is no evidence that he sent a notice by telegram canceling the contract. There is no evidence that he returned the $100 mentioned in the contract, except the testimony of the witness McKemey, as follows: "As I remember it, the defendant claimed to have sent a telegram to Mr. Parsons in which, under the terms of the contract, he canceled it. This,

of course, was denied by Mr. Parsons, and this was one of the issues in the settlement. That was one of the controverted questions in the case brought˜by Parsons against the defendant for a specific performance of the above contract."

It appears that after this contract was drawn up for some reason the defendant refused to comply with it; that thereafter Parsons brought an action to enforce the specific performance of the contract; that the action was brought by Parsons directly against the defendant to enforce the contract hereinbefore set out. The Pogues were made parties by cross-petition. The Burlington Building Company were brought in, and in that suit the defendant herein filed a cross-petition against the Pogues to enforce the contract he had with the Pogues. They finally arrived at a settlement of the controversy as follows:

It is hereby agreed by and between all of the parties hereto, including J. D. Parsons, plaintiff, John F. Axelson and wife, I. T. Pogue and husband, defendants, and the Burlington Building Company, defendants in cross-petition, that all matters pending between the parties hereto, plaintiffs, defendants, cross-petitioners, and defendants to cross-petition, are hereby settled and adjusted in full, and all claims by and against all of us are to be dismissed on their merits, and no claim shall be made by any of us for any damages, on account of any of the matters set forth in the petition and cross-bill. It is hereby stipulated and agreed that the said J. D. Parsons shall pay to said John F. Axelson the sum of $2,700.00, dismiss his action and pay the costs therein, taxed at $———. In consideration of such payment, said John F. Axelson and wife hereby agree to dismiss their cross-petition and withdraw their answer filed in said cause, and *do hereby release to said Burlington Building Company* any and all claims in or to the lands described in said action and said J. D. Parsons and said John F. Axelson and wife herewith specifically release each other from any claim of any kind growing out of the contract of sale executed between them, for the lands described in said action; said sum of $2,700.00 to be paid within five days from this date.

It appears that prior to this settlement above set out Pogues had conveyed, at the request of Parsons, all their interest in the property in controversy to the Burlington Building Company, subject to their contract with the defendant; that in this settlement the plaintiff released all his interest in the land to the same company; that in consideration of his so doing Parsons agreed to pay to the defendant $2,700, and the cause was thereupon dismissed.

It appears further from the testimony of Jaques and McKemey, both of whom were witnesses for the plaintiff, that during the negotiations for the above settlement the defendant frequently said that he was under obligation to pay the plaintiff a commission for services in procuring the sale that resulted in the contract between Parsons and the defendant, and it appears from the record that the conveyance made by the Pogues to the Building Company and the release of defendant's interest in the land to the Building Company were all made at the instance and request of Parsons. It will be remembered that the defendant's contract with the Pogues evidenced the only interest which the defendant had in the property, and it in no way affected the right of the Pogues to make any conveyance of their interest in the property. Nor did the plaintiff undertake to sell for the defendant any interest in the property other than that which the defendant owned; and this is the interest which was ultimately released to the Building Company on the direction of Parsons, the purchaser procured by the plaintiff.

The defendant's counsel, in his argument, assumes the existence of facts not disclosed by the record. He says that at the time the contract was entered into between Parsons and the defendant the defendant had a cash deal pending with another party, and that the clause in the contract reserving to defendant the right to cancel was inserted there because of the existence of such pending deal; that immediately after canceling the contract he entered into a contract with other parties to sell the land to them for cash, and that by reason

of that fact Parsons placed his contract on record; that the defendant waited until March 4th, and then tendered to the Pogues the balance due upon their contract, and demanded a deed; that the Pogues had conveyed their land to the Building Company and were unable to make the deed; that the defendant tendered to the Building Company the amount due from him on the Pogues contract, and demanded a conveyance of the property to him, which was refused by the officers of the company; that the Pogues sold the farm to the Building Company in order to settle the lawsuit with defendant.

We find no evidence of these facts in the record, and, if they are true, counsel must have drawn on his knowledge of facts outside the record to justify the statement, or perhaps this is counsel's inference from the record as made. But, even if the record did show, as claimed by defendant, yet we think the case ought to be reversed, for the reasons hereinafter stated.

Coming back to the original proposition, what was the contract between the plaintiff and defendant? It was to the effect that if the plaintiff procured a purchaser for the land in question, or the defendant's interest in the land in question, on terms satisfactory to the defendant, or would procure one who would trade for defendant's land on terms satisfactory to the defendant, the defendant would pay the plaintiff the stipulated commission. It appears that the plaintiff produced Parsons; that Parsons entered into negotiations with the defendant for the purchase of the land in controversy on terms satisfactory to the defendant; that the negotiations resulted in the contract hereinbefore set out; that defendant subsequently refused to carry out the contract; that Parsons brought an action to enforce the specific performance of the contract; that the contract made with Parsons was an enforceable contract as between Parsons and the defendant; that Parsons was ready and willing to per-

form it on his part; that he demanded a performance and sought to have it enforced.

The law that governs the parties under such circumstances is as follows: When an agent contracts to procure a purchaser for his principal who will purchase on terms satisfactory to the principal, and thereupon produces a purchaser who is ready, able, and willing to purchase on terms satisfactory to the principal, and with whom his principal enters into an enforceable contract, the agent has earned his commission, even though the contract is afterwards canceled by his principal without the consent of the agent. That, under a contract of agency like the one in question, if the agent produces a purchaser for his principal who at the time is ready, able, and willing to buy, and he enters into a contract for the purchase on terms satisfactory to the principal, although in the contract so entered into there is a provision that the principal may terminate the contract within a certain time, if he so elects, the agent has earned his commission, even though the principal afterwards elects to avail himself of the provisions of the contract and cancels the same. This is true because the agent has done all that was required of him to do under the terms of his contract, and the principal may enforce it, or elect to cancel it at his option. The right of the agent to his commission is in no way affected by the conduct of his principal to which he has not consented subsequent to the execution of the contract of sale. It has been further held that, where the vendor of land enters into a contract of sale with a competent purchaser produced by a broker or agent, the subsequent inability even of the vendor to convey title by reason of which the contract is not performed does not release the principal from the obligation to pay the agent his commission.

*1. AGENCY: commission contracts: rights of agent.*

In *Willes v. Smith,* 77 Wis. 81 (45 N. W. 666), we find this language used in a case similar to this: "If the title was good, the vendees were absolutely bound to accept the prop-

erty and pay the purchase price, unless the vendor elected to waive a performance on their part and retain the money. We have no doubt that, under this contract, the defendant herein could have enforced a specific performance of the contract had he seen fit to do so. The option given him to terminate the contract was for his benefit solely. The vendor elected to waive performance on the part of the vendee and retained the amount stipulated as liquidated damages, and the contract was never performed between the vendor and the vendee. The court says: "It appears, therefore, that the plaintiff procured a person willing and able to purchase the property on the terms fixed by the defendant, and consequently earned his commission."

In *Francis v. Baker*, 45 Minn. 83 (47 N. W. 452), the Minnesota Supreme Court used the following language in respect to a transaction similar to the one before us: "Where a person agrees with a real estate broker to pay him a commission if he procures a purchaser . . . on specified terms, the broker, in order to entitle him to his commission, is bound to present a purchaser who is ready, able, and willing to buy on the proposed terms, and the principal is not bound to accept a proposed purchaser unless he is able to perform the contract on his part according to the proposed terms. . . . It is for the principal then to decide whether the person presented is acceptable; and if, without any fraud, concealment, or other improper practice on part of the broker, the principal accepts the person presented, either on the terms previously proposed or upon modified terms then agreed upon, and enters into a binding and enforceable contract with him for the purchase of the property, the commission is fully earned. The party presented is then a purchaser within the meaning of the contract between the principal and the broker, although the sale is not completed"—in support of which see *Rice v. Mayo*, 107 Mass. 550; *Pearson v. Mason*, 120 Mass. 53; *Keys v. Johnson*, 68 Pa. 43.

In *Knapp v. Wallace*, 41 N. Y. 477, where a broker was

employed to find a person to convey land to be paid for in money, and in *Kalley v. Baker,* 132 N. Y. (29 N. E. 1091, 28 Am. St. Rep. 542), where a broker was employed to find a person to convey land, to be paid for by a conveyance of other land—that is to say, to effect an exchange—it was held that, where the principal makes a valid agreement with a customer produced by a broker, the broker has earned his commission, even if it turns out that the customer cannot make a good title, and the land is not conveyed, provided the broker acted in good faith in the matter.

In *Roche v. Smith,* 176 Mass. 595 (58 N. E. 152, 51 L. R. A. 510, 79 Am. St. Rep. 345), a case in which a broker was employed to get a customer to buy and pay for his principal's land, and it turned out that the customer is not able to pay for the land, it is settled that his inability to do so does not deprive the broker of his commission, provided the principal made a valid and binding agreement for the sale of the land with the customer produced by the broker. In support of this see *Ward v. Cobb,* 148 Mass. 518 (20 N. E. 174, 12 Am. St. Rep. 587), and it is said: "The ground upon which this is settled is that, by entering into a valid contract with the customer produced by the broker, the principal accepts the customer as able, ready, and willing to buy the land and to pay for it. But, if the principal did not accept the customer produced by the broker, the burden would rest upon the broker to show that the customer so produced by him was able; and in such a case, if it turned out that the customer produced by the broker is not able to pay and does not pay for the land, the broker has not performed his contract, and has not earned his commission. It is only in cases where the principal accepts the customer by entering into a valid contract with him that it is held that the broker has earned the commission, even though it afterwards turns out that the purchaser produced by him was not able to perform the contract. See *Glentworth v. Luther,* 21 Barb. (N. Y.) 145; *Simonson v. Kissick,* 4 Daly (N. Y.) 143; *Keys v. Johnson,* 68 Pa. 43. See, also,

*Lockwood v. Halsey*, 41 Kan. 166 (21 Pac. 98), in which it is said: "The rule seems to be well settled by authority and good reason that, to entitle a real estate agent to his commission in a sale or exchange of lands, it is only necessary for him to furnish a purchaser who is able and willing to purchase or exchange upon the terms and conditions agreed to . . . by the seller. This would *prima facie* entitle the agent to receive a commission. Where such a proposition is not accepted by the owner of the land, then, before an agent can recover his commission, he must still further show that the purchaser he has found is willing and able to purchase or exchange upon the terms offered by the owner of the land. . . . But where they are brought together in person," a purchaser and seller, and "the purchaser is accepted and the exchange is authorized," the commission is earned, "although afterwards it may turn out that there is a defect in the title and quality or condition of the land. In this case Halsey [the defendant] accepted the trade, directed the exchange of papers with a full knowledge of all the facts possessed by Lockwood [his agent]." This rule is based upon the theory that the agent acted in good faith in the transaction, and without fraud or deceit or concealment from his principal. In support of this doctrine, see *McGavock v. Woodlief*, 20 How. 221 (15 L. Ed. 884) ; *Everhart v. Searle*, 71 Pa. 256.

In *Wenks v. Hazard*, 149 Iowa, 16, the principal agreed with his agent that he would give him $2,000 if he would find a purchaser for the principal's property who was satisfactory to the principal, or to whom the principal was willing to sell. That thereafter the agent produced a purchaser who was satisfactory to the defendant, and to whom defendant sold his property. The court in deciding that case said: "The case at bar belongs" to a class by itself. "Here the terms of sale were not fixed in advance by the owner, and therefore it was impossible for the plaintiff to know what they were or might be. The terms and conditions of the sale being expressly reserved for determination by the owner, it is mani-

fest that the agent or broker cannot know whether the purchaser can or will accede to the terms fixed'' upon by the owner. ''The owner reserves the right to and determines the ability of the purchaser to pay or to comply with other terms which he may fix, and it would be manifestly unjust to say to the broker that his commission must depend upon the correctness of the owner's judgment or ability.''

In *Nagl v. Small,* 159 Iowa, 387, the same doctrine is laid down. It is said: ''It is well settled that when the agent proposes a purchaser·acceptable to the owner, who makes with him a binding contract providing for the terms and conditions on which he shall have a conveyance of the property, nothing remaining as between them save the performance by such accepted purchaser of the terms and conditions of the contract thus entered into, the agent becomes entitled to his commission. This rule was settled after full discussion of the authorities.''

*Flynn v. Jordal,* 124 Iowa, 457, is in accord with the general weight of authority. In this case it is said: ''Under circumstances like those in this suit and the purchaser is produced by the agent, it is then for the principal to decide whether the purchaser is acceptable precisely as when the purchaser is present personally, and, if he executes the contract on his part, it is binding upon him, and it was held there that under such circumstances the agent would have earned his commission.''

Coming back to the case of *Ford v. Easley & Co.,* 88 Iowa, 603, we find this language used: ''It is true the pleadings allege that the plaintiff was authorized to sell the property on the terms given, and that he was to receive as commission whatever sum he might obtain in addition to $400 per front foot, and that he was entitled to the amount claimed as commission for selling the property; but it is clear that no power was given him to execute a conveyance, . . . and that what the parties contemplated by the arrangement made between them was that plaintiff should obtain a purchaser for

the property for the price and on the terms given him, and that the conveyance should be made by the defendant. . . . When the plaintiff found a person who agreed to take the property on the terms given, and was able and ready to carry out the agreement, he had done all he was authorized to do to effect a sale, and was entitled" to the commission agreed upon, and, if the purchaser was willing to take it in excess of the price agreed upon, that would be the measure of his commission.

We recognize the fact that the rule herein stated has not met with universal satisfaction; that some cases hold to a different doctrine; that some cases hold that, even if a binding and enforceable contract has been entered into between the party produced and the principal, the agent seeking to recover commission still has the burden of proving that the party procured by him was not only ready and willing, but able to perform the contract. Such holding will not stand a careful analysis of the relationship which the contract itself creates between the agent and the principal. The agent agrees to produce a purchaser who will buy on terms satisfactory to his principal. The principal does not communicate to his agent what these terms are that will be satisfactory to him, or on which he is willing to part with his property. The agent does not and cannot know what kind of a party his principal wants, or whether he can or will, when produced, be willing and able to purchase upon the terms stated to him. The agent, however, in pursuance of his contract produces A. A. enters into negotiations with the principal, but is not willing or able to buy on the terms satisfactory to him. Nothing is done and no commission earned. The agent produces B. The same result follows, and no commission earned. He produces C. The seller enters into negotiations with C. The principal, for the first time, states and makes known to C., the buyer, the terms and conditions on which he is willing to sell. He makes a contract of sale with C. that is satisfac-

2. SAME: contract to procure purchaser: burden of proof.

tory to both, and legally binds both.  This right he reserved
when he employed the agent to negotiate.  The contract is
then reduced to writing and signed by both, as follows:  That
C. will pay $10,000 down in cash; $5,000 in one year at· 6
per cent.; the balance in ten years at 6 per cent., secured by
a mortgage on the land.  At the time the contract is entered
into, C. has only $10,000 which he then pays down.  Has the
agent to wait until C. has fully performed, or is he required
to show under such a contract that at the time C. entered into
it he was able then to perform all such conditions?  We think
not.  The rule herein announced presupposes that the agent
has acted in good faith and without fraud or concealment, or
without any collusion with the purchaser, and also that the
contract entered into between the purchaser and the seller
is a completed and enforceable contract, enforceable by both
and not a contract where there is something yet to be done by
the purchaser to make it satisfactory to the seller and enforce-
able, as, for instance, to furnish an abstract showing good
title in him (if the deal is for exchange of land), or, if for
a sale with deferred payments, to give a note with sureties
to be approved by the seller, etc.  It must be a completed and
enforceable contract before the commission is earned.

Under the facts shown by this record and under the law
as it is, and was at the time this case was tried, we are satis-
fied that the court erred in directing a verdict for the defend-
ant.  We further find that this court has jurisdiction of this
cause, and that the motion to strike abstracts and amended
abstracts from the record should be and is overruled.

The cause is therefore *Reversed* and *Remanded*.