## MARTIN PAULSON v. J. A. REEDS.

(156 N. W. 1031.)

Suit for commission for furnishing purchaser for real estate, the terms of the listing contract being in dispute.

**Instructions to jury — commissions — real estate agent — furnishing buyer — contract.**

1. Instructions of the court examined and found correct in all particulars excepting the part which instructs the jury that the signing of exhibit "A" settled the controversy relative to the amount of the commission. For reasons stated in the opinion, this is error which necessitates a new trial.

**Defendant — letters — statements — inconsistent with present theory — admissions against interest.**

2. A certain letter written by defendant to a banker, containing statements inconsistent with his present theory of the commission contract, was properly received as an admission against interest.

**Plaintiff — defendant — dunning letter — threatened arrest — bias and preju-
dice — questions — examination of witness.**

3. It was error to ask the defendant whether he had not attempted to have
plaintiff arrested for sending him a dunning letter, without first giving the
witness a chance to admit his bias and prejudice against the plaintiff.

Opinion filed February 11, 1916.

Appeal from the District Court of Richland County, *Pollock,* J.
Reversed.

*W. S. Lauder,* for appellant.

It is the law that where a party sues on an express contract he cannot
recover on an implied contract or on *quantum meruit.*    9 Cyc. 749, et
seq.; Wernli v. Collins, 87 Iowa, 548, 54 N. W. 365; Morrow v. Board
of Education, 7 S. D. 553, 64 N. W. 1126; Ball v. Dolan, 21 S. D.
619, 15 L.R.A.(N.S.) 272, 114 N. W. 998; 2 Enc. Pl. & Pr. 990.

While an appellate court will not disturb a judgment for an imma-
terial error, yet it should appear beyond a doubt that the error of which
complaint is made did not and could not have prejudiced the rights
of the objecting party.    Boston & A. R. Co. v. O'Reilly, 158 U. S. 334,
39 L. ed. 1006, 13 Sup. Ct. Rep. 830; Deery v. Cray, 5 Wall. 795, 18
L. ed. 653; Norfolk & P. Traction Co. v. Miller, 98 C. C. A. 453,
174 Fed. 607; Gilmer v. Higley, 110 U. S. 47, 28 L. ed. 62, 3 Sup.
Ct. Rep. 471; Taggart v. Bosch, 5 Cal. Unrep. 690, 48 Pac. 1092;
Thomas v. Carey, 26 Colo. 485, 58 Pac. 1093; Norfolk & W. R. Co. v.
Briggs, 103 Va. 105, 48 S. E. 521; Henry v. Colorado Land & Water
Co. 10 Colo. App. 14, 51 Pac. 90; Cooke v. McAleena, 18 Misc. 219,
41 N. Y. Supp. 479; Comaskey v. Northern P. R. Co. 3 N. D. 279, 55
N. W. 732; Moore v. Booker, 4 N. D. 558, 62 N. W. 607; Hegar v.
De Groat, 3 N. D. 354, 56 N. W. 150; McKay v. Leonard, 17 Iowa,
569; Freeman v. Rankins, 21 Me. 446; 1 Hayne, New Tr. & App.
Rev. ed. § 26, subd. 2, 2 Hayne, New Tr. & App. Rev. ed., § 287;
Rulofson v. Billings, 140 Cal. 452, 74 Pac. 35.

A party cannot insist upon the admission of improper evidence over
objection to its admissibility and then defend his course by contending
that the error was harmless.    Smith v. Westerfield, 88 Cal. 374, 26
Pac. 206; Lissak v. Crocker Estate Co. 119 Cal. 442, 51 Pac. 688;

Re James, 124 Cal. 653, 57 Pac. 578, 1008; Helling v. Schindler, 145 Cal. 303, 78 Pac. 710, 17 Am. Neg. Rep. 177.

An offer of payment made in the way of a compromise, or to avoid litigation, cannot be shown as an admission on the part of the one making the offer that he is in fact indebted to the party to whom such offer is made. Pelton v. Schmidt, 104 Mich. 345, 53 Am. St. Rep. 462, 62 N. W. 552; Dwight v. Hayes, 150 Ill. 273, 41 Am. St. Rep. 367, 37 N. E. 218.

It is competent for a party sought to be held on a written contract to show by parol evidence that when he signed the same it was agreed that it should not be held binding except upon some future contingency, upon the happening of some future event, or not at all. Burke v. Dulaney, 153 U. S. 228, 38 L. ed. 698, 14 Sup. Ct. Rep. 816, and cases there cited.

The rule excluding parol evidence, where it contradicts a written contract, presupposes the existence in fact, of such contract, and has no application if the writing was not delivered as a present contract. Pym v. Campbell, 6 El. & Bl. 373, 25 L. J. Q. B. N. S. 277, 2 Jur. N. S. 641, 4 Week. Rep. 528; Davis v. Jones, 17 C. B. N. S. 625, 25 L. J. C. P. N. S. 91, 4 Week. Rep. 248; Wallis v. Littell, 11 C. B. N. S. 369, 31 L. J. C. P. N. S. 100, 8 Jur. N. S. 745, 5 L. T. N. S. 489, 10 Week. Rep. 192; Wilson v. Powers, 131 Mass. 539; Pawling v. United States, 4 Cranch, 219, 2 L. ed. 601; Lindley v. Lacey, 17 C. B. N. S. 585, 34 L. J. C. P. N. S. 7, 10 Jur. N. S. 1108, 11 L. T. N. S. 273, 13 Week. Rep. 80; Clever v. Kirkman, 33 L. T. N. S. 672, 24 Week. Rep. 159; Gudgen v. Besset, 6 El. & Bl. 986, 26 L. J. Q. B. N. S. 36, 8 Eng. Rul. Cas. 612; 2 Taylor, Ev. 8th ed. § 1135; 17 Cyc. 642, cases cited under note 46; Branson v. Oregonian R. Co. 11 Or. 161, 2 Pac. 86.

The fact as to whether or not actual delivery of a contract was ever made, or that such contract was intended by the parties as a present, effective contract, where the evidence is conflicting, is a question for the jury. Taylor v. Jones, 3 N. D. 235, 55 N. W. 593; Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A.(N.S.) 75, 140 N. W. 718; Clemens v. Royal Neighbors, 14 N. D. 116, 103 N. W. 402, 8 Ann. Cas. 1111; Houghton Implement Co. v. Vavrowski, 19 N. D. 594, 125 N. W. 1024; Edwards v. Chicago, M. & St. P. R. Co. 21 S. D. 504, 110

N. W. 832; Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960; Walkin v. Horswill, 24 S. D. 191, 123 N. W. 668; Berry v. Chicago, M. & St. P. R. Co. 24 S. D. 611, 124 N. W. 859; Casey v. First Nat. Bank, 20 N. D. 211, 126 N. W. 1011; Charles E. Bryant & Co. v. Arnold, 19 S. D. 106, 102 N. W. 303; Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646; Comeau v. Hurley, 24 S. D. 255, 123 N. W. 715; Olson v. Day, 23 S. D. 150, 120 N. W. 883, 20 Ann. Cas. 516; Mosteller v. Holborn, 20 S. D. 545, 108 N. W. 13; Grant v. Powers Dry Goods Co. 23 S. D. 195, 121 N. W. 95; Leisen v. St. Paul, F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837, and cases cited; Stotlar v. German Alliance Ins. Co. 23 N. D. 346, 136 N. W. 792, and cases cited.

To entitle a real estate broker to a commission on the sale of land listed with him for sale, he must show that he sold the land, or found a purchaser ready, willing, and able to buy it *on the terms* and *conditions* upon which he was authorized to sell it. Anderson v. Johnson, 16 N. D. 174, 112 N. W. 139; Fulton v. Cretian, 17 N. D. 335, 117 N. W. 344; Ames v. Lemont, 107 Wis. 531, 83 N. W. 780; McArthur v. Slauson, 53 Wis. 41, 9 N. W. 784; Ball v. Dolan, 18 S. D. 558, 101 N. W. 719; Milligan v. Owen, 123 Iowa, 285, 98 N. W. 792; Wenks v. Hazard, 149 Iowa, 16, 127 N. W. 1099; Cook v. Forst, 116 Ala. 396, 22 So. 540; Steinfeld v. Storm, 31 Misc. 167, 68 N. Y. Supp. 966; Reiger v. Bigger, 29 Mo. App. 428.

*Wolfe & Schneller,* for respondent.

The agreement in this case was that if the plaintiff should find a purchaser for defendant's land, he should have as his compensation all received over and above a fixed price per acre; that plaintiff was to be paid when the sale was finally closed by conveyance; that defendant did not repudiate such contract, but accepted the benefits accruing thereunder, and thereupon became liable for the commission. Francis v. Baker, 45 Minn. 83, 47 N. W. 452; Ketcham v. Axelson, 160 Iowa, 456, 142 N. W. 62; Ward v. McQueen, 13 N. D. 156, 100 N. W. 253; Goss v. Stevens, 32 Minn. 472, 21 N. W. 549; Northern Immigration Asso. v. Alger, 27 N. D. 467, 147 N. W. 100.

A land broker's commissions are earned and become payable when he brings together the land owner and a purchaser who actually buys the land. Anderson v. Johnson, 16 N. D. 174, 112 N. W. 139.

Error must be made to appear, and will not be presumed, because it is claimed. All reasonable presumptions warranted by the record will be indulged in support of the action of the trial court. The trial court, in passing upon a motion or objection, decides a question of fact, upon which fact the ruling is grounded. The appellate court must, in the absence of a showing to the contrary, take that fact as conclusively established. Paulson v. Reeds, 24 N. D. 211, 139 N. W. 1135.

BURKE, J. Defendant listed 800 acres of land for sale. Unfortunately, the contract was not reduced to writing, and there is a dispute not only as to the price and terms which he desired, but the amount of commission which he should pay. Plaintiff's version is that first in 1909, again in January, 1910, at least once between January and June, and again on June 28, 1910, the subject of commissions was discussed. That just prior to the sale itself when the contracts with the purchaser were awaiting signature, defendant promised to pay his commission upon the sale actually made.

He testifies:

After he (Reeds) read this little statement there he say, "I can't pay you a commission on that, Paulson." "Well," I says, "that is not to you." Then he says, "What do you get for it—I suppose you get $20 an acre?" I said, "No, I don't. I get $17.50." He says, "All right," and then he signs it. That was all there was to it. . . .

Q. Now, Mr. Paulson, when these contracts were signed by Mr. Reeds and Mr. Huey in your office, I mean the contracts, exhibit "B" (by which the land was sold), was there anything said between you and Mr. Reeds at that time about the payment of commissions, or what should become of the excess of the purchase price of these lands over $16 an acre?

A. Yes, sir.

Q. What was that?

A. He said that I can't pay your commissions out of these payments. "Well," I said, "I will wait until the November 15th settlement is made for my commissions."

Q. When did you have that talk, before or after the contract, exhibit "B" was signed?

A. Before.

Plaintiff had already testified that he was to receive as his commission all over $16 an acre of the purchase price. He had also testified that the first listing proposition had with defendant was one third cash and deferred payments to bear 6 per cent interest. Defendant's contention is that he listed the land for sale at $17.50 per acre, one third cash, deferred payments 7 per cent. That the commission should be $1 per acre if plaintiff furnished the buyer himself, but that if the sale was made to a purchaser who was introduced to plaintiff by the defendant, the commission should be 50 cents per acre. It thus appears that there are two separate disputes: first, as to the terms upon which the lands could be sold; and, second, the amount of the commission to be paid for producing a purchaser. These questions were necessarily complicated in the trial below by the injection of exhibit "A,"—a paper signed by defendant at plaintiff's request, just prior to the sale, and reading as follows:

Wyndmere, N. D., June 28, 1910.

Martin Paulson:

You are hereby authorized to sell my land, W½ SE¼ 21, and E½ of 20, 133–52, at $16 per acre net to me.

(Signed)   J. A. Reeds.

It will be noticed that this merely authorizes a sale of the land at $16 per acre, but does not mention the matter of commissions, we having already held in Louva v. Worden, 30 N. D. 401, 152 N. W. 689, that using the word "net" does not amount to a contract to pay all of the purchase price over the net to the agent. The jury found for plaintiff in the full sum demanded, $1,200. No motion for a new trial was made, and the matter is before us upon assignments of error. The trial below occurred before the Louva v. Worden, supra, and Harris v. Van Vranken, — N. D. —, 155 N. W. 65, opinions were handed down by this court. Many of the questions raised in the briefs have been decided by those two cases, and will not be further discussed. Plaintiff brings this action upon an express contract alleging that he produced a purchaser able, willing, and ready to buy upon the listing terms. That the land was actually sold upon those terms. That under

his contract he was to receive the difference between $16 per acre and $17.50, or $1,200. The answer of defendant is a general denial.

(1) Appellant's principal assignment challenges the court's instructions to the jury. He insists that the court told the jury that the contract regarding the commissions was contained in exhibit "A" alone, and that if they found as a matter of fact that defendant had signed exhibit "A," then plaintiff was entitled to recover $1,200. If the charge bears this interpretation, it is clearly erroneous. An examination of the whole charge becomes necessary, and we quote from the charge covering this phase: "Plaintiff contends . . . that Mr. Paulson was authorized by Mr. Reeds, the defendant, to sell the land described in the complaint, amounting to 800 acres, for the sum of $16 an acre net to Mr. Reeds; . . . that in pursuance of said contract Paulson did sell the land to Mr. Huey for $17.50 per acre; . . . that the entire compensation therefore would be $1,200; . . . the defendant . . . admits that there was some talk to the effect that if a sale was made he would give him $1 an acre if he sold the land for $17.50 an acre, but in that event he claims that the land must be sold in such a manner that the defendant could have one third of it in cash and 7 per cent interest on all deferred payments. . . . He contends that in the event he, Reeds, brought the purchaser to Paulson . . . in that event, he, Reeds, would pay to said Paulson the sum of 50 cents an acre for his services. . . . He denies that at the time of signing the contract with Mr. Huey, exhibit 'B,' that there was any further or additional contract; . . . he further claims that, before signing the contract with Mr. Huey, he did not agree to any modification or change whatsoever in the contract as claimed by Mr. Paulson, as above set forth, and that the reason why he signed the contract was that at that time Paulson agreed that the question of commissions should be later adjusted between the two. . . . You will see that before you can proceed further, it will be necessary for you to find what the contract between the parties was. . . . There is, as I understand it, a dispute as to whether Mr. Reeds signed exhibit 'A,' and perhaps the first thing for you to do will be to determine this disputed question. The burden of proof is upon the plaintiff to show that Mr. Reeds signed this exhibit. You will observe that exhibit 'A'—and I so charge you—is not a complete contract, as

it does not provide for interest and payments in case of a sale, and, therefore, to determine as to the terms and conditions upon which plaintiff was authorized to sell the land you are to consider all the evidence of the case.    It is contended by the plaintiff that the terms not mentioned in exhibit 'A' were that the land should be sold at one third cash at the time of the giving of the deed, and interest was to be at the rate of 6 per cent per annum.    Whereas the defendant insists that the terms as to time and rate were that the one third should be paid at the time of the making of the contract, and that interest was to be figured at the rate of 7 per cent per annum.    If you find, by a preponderance of the evidence, the burden being upon the plaintiff, that the defendant, Reeds, signed exhibit 'A,' then that settles the contract as between them in so far as Paulson's authority to sell the land at $16 per acre net to Mr. Reeds is concerned.    In that event, to determine what the other portions of the contract were, you will look to the other evidence to find what the time of making the payments and the rate of interest were to be.    This is not an action to recover the reasonable value of the services of Mr. Paulson, if any he performed.    As called at law, it is not an action upon *quantum meruit,* but is based upon a contract for a specific sum, and the obligation now falls upon you, gentlemen, to determine what that contract was.    There has been a good deal of evidence offered and presented to you, and under the rules of law you are to consider it all for the purpose of trying to put yourselves in the situation of the parties when having the transaction about which testimony has been given.   In making up your judgment as to what the contract was, you ought to consider all the testimony, whether the conversations happened on one day or whether they continued through several days or weeks, provided it was one continuous transaction and had reference to the making of the deal in question, if upon all the testimony you find that the contract was for 50 cents an acre,  .  .  . he would be entitled to a verdict of $400.  If you believe by a preponderance of the evidence that the defendant, Reeds, signed exhibit 'A' and thereafter entered into the contract, exhibit 'B' under the terms as therein stated,  .  .  .   then I charge you that the plaintiff would be entitled to a judgment for the sum of $1,200 and interest at the rate of 7 per cent from and since November 15, 1910; the principle of law being that where a person agrees with a real estate broker to pay him

a commission if he procures a purchaser on specified terms, the broker, in order to entitle him to his commission, is bound to present a purchaser who is ready, able, and willing to buy on the proposed terms; . . . and if, without any fraud, concealment or other improper practice on the part of the broker, the principal accepts the person presented, either on the terms previously proposed, or on modified terms, then agreed upon, and enters into a binding and enforceable contract with him for the purchase of the property, the commission is fully earned. . . . If you believe by a preponderance of the evidence that exhibit 'A' was signed and delivered to Mr. Paulson, and you further believe that there was a dispute between Reeds and Mr. Paulson as to the time of the cash payment and the rate of interest, it was the duty of Mr. Reeds when the contract, exhibit 'B' was presented, to repudiate the same, refuse to sign it, and cancel the agency of Mr. Paulson; . . . or declare that he would not accept the trade upon any other terms than those for which he was contending. But if he did not do that for any reason, and accepted the terms of the contract as made by exhibit 'B,' then he would be regarded in law as having approved such terms, and, having entered into the contract, he would be required to pay the commission agreed upon. If his consent to enter upon the agreement was induced by any other evidence or offer, that question cannot be heard at this time to modify or reduce the amount coming to the plaintiff Paulson under the terms of the contract, as you shall have found it to be. °. . . If you find that Mr. Reeds did not sign exhibit 'A' . . . you are still to say whether from the talk between the parties, Mr. Reeds did agree to give Mr. Paulson any compensation whatever,—and when you find out what it was, then the same rules will apply as to the liability of Mr. Reeds as I have heretofore described with reference to his liability in case you shall find that he signed the exhibit 'A.' "

Much of the charge given is correct, but we cannot escape the fact that the court understood the signing of exhibit "A" to settle the question of commission at $1.50 per acre. In this there was error. Much has been written upon the subject of brokers' and real estate agents' commissions. Valuable notes will be found in 21 L.R.A.(N.S.) 935; 29 L.R.A.(N.S.) 533; 34 L.R.A.(N.S.)1050; and 139 Am. St. Rep. 225; 2 Hill's Dakota Dig. pp. 174–177. There is nothing unusual

about a real estate commission contract. It is governed largely by the ordinary rules of contracts. If the agent is to furnish a buyer at $16 an acre and receive all he can get from the purchaser over that sum as his commission, that is one contract. If he is to furnish a buyer and receive $1 an acre as his commission, that is another contract. If he is to furnish a buyer with whom the owner makes a satisfactory contract, and is to receive as his commission a certain percentage of the purchase price, that is still another contract. The last-mentioned state of affairs presents different problems entirely from the one in the case at bar. Respondent has cited us to a few cases based upon this last kind of contract as precedent for the case at bar, but obviously they have no application. In the case before us there were two disputes,—one as to the terms upon which the land could be sold, second, as to the amount of the commission to be paid. The trial court correctly outlined the issues as to the first dispute, and correctly outlined the issues as to the second dispute, excepting that he told the jury that if he had signed exhibit "A," then the question of commissions was settled at $1,200. This, we think, is erroneous. If it is kept in mind that the commission is earned when the purchaser able, willing, and ready to buy according to the listing terms is found, a better understanding of the law will obtain. After the purchaser has been produced and the commission earned, the owner and the purchaser may change the terms all they please, and it does not affect the matter of the commission. Much of the so-called confusion of the cases results from a failure to keep this simple proposition in mind. Our own court in Ward v. McQueen, 13 N. D. 153, 100 N. W. 253, failed to make this plain although they did say, after setting out the facts, "this shows *a full performance by plaintiff* of the duties of the employment *under the listing contract* and entitled them to their commission. . . . The terms of sale agreed upon and assented to by the defendant were different in some respects from those stated in the listing contract. For this reason it is contended that the plaintiffs are not entitled to the compensation provided for in the agency contract, but that they must show that the defendant expressly agreed to allow the same compensation for the sale upon the modified terms as was fixed by the agency contract. . . . There is no merit in this contention."

It is evident that the court had in mind the fact that the commission had already been earned, and it made no difference that thereafter the actual sale was made on slightly different terms. The balance of the opinion is therefore *obiter,* and we fear overlooked this basic principle, —that the agent must have first produced a purchaser able and willing to take the land under the listing contract, and that, having produced such a purchaser, it was immaterial that the sale is made upon different terms. For that matter, it was not material whether the sale is made at all. That this was the laws appears from the citations given by this court towards the bottom of page 156 of said opinion. The first case cited is Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653. We quote from the syllabus in that case, the italics being ours: "1. Evidence in an action by a real estate broker for commissions considered, and held to show that the *broker had procured a purchaser able, ready and willing to purchase on terms acceptable to the owner,* and that a failure to complete the sale was the owner's fault. 2. The fact that the terms of sale of realty, as stated to a broker, were modified by the owner's acceptance, in the broker's presence, of the purchaser's proposal as to the method of payment, would not relieve the owner from liability for commissions."

The second case is Knowles v. Harvey, 10 Colo. App. 9, 52 Pac. 46. Again we quote from the syllabus, italicizing the portions we wish to emphasize: "1. When a broker in whose hands property has been placed to exchange, finds a person who is *willing to trade on the first party's proposition,* and he brings the parties together, with the result that a trade is made, though on somewhat different terms than in the original proposition, he earns a commission."

The third case cited, Magill v. Stoddard, 70 Wis. 75, 35 N. W. 346, is to the same effect. Paragraph 2 of the syllabus reads: "Plaintiffs, real estate agents, agreed for a certain per cent on the price, to procure a purchaser for defendant's land. The evidence showed that plaintiffs *procured a purchaser for the land on the terms agreed upon,* and that defendant then refused to sell but wanted a higher price. Held, that the evidence warranted a verdict for plaintiffs for the agreed compensation." From the body of the opinion we quote: "There was evidence that the parties made another contract in November, following.

. . . The instruction of the court that this new arrangement to sell on different terms would not destroy the plaintiffs' right to recover the commissions they had already earned, . . . was clearly correct. . . . The new contract, therefore, cuts no figure in the case on this appeal."

In Welch v. Young, — Iowa, —, 79 N. W. 59, it is said: "There is no doubt that Mr. Bennett was able, willing, and anxious to perform the contract on his part; but it appears that the defendants were unable to furnish an abstract of clear title at that time, wherefore the contract was not performed." In the syllabus it is said: "An agent employed to effect a sale of land is entitled to compensation where he obtains a person who executes a contract with the owner, and is able, anxious and willing to perform, but, because of the owner's inability to furnish a sufficient abstract of title, the sale is not consummated." It is therefore apparent, first, that Ward v. McQueen is subject to the criticism above mentioned. The conclusion is right, though part of the reason is wrong. The correct rule is stated by this court in Anderson v. Johnson, 16 N. D. 174, 112 N. W. 139, where it is said: "It seems to have been the theory of plaintiff's counsel and also the trial judge that all it was necessary for them to prove in order to recover was the existence of the contract as pleaded, and that they produced the person claiming to own the property, and he, in fact, entered into a contract with defendant to sell the same to him upon some terms acceptable to defendant. In other words, even though Staiger was unwilling and refused to sell at the price of $2,300 [the listing contract] that, if defendant dealt with him on any other terms whatever, plaintiffs would still be entitled to their commission. . . . This is clearly erroneous." In respondent's brief and upon oral argument it was insisted that there were but two lines of authority, one being the "Minnesota rule." We do not believe there is any distinction. Francis v. Baker, 45 Minn. 83, 47 N. W. 452, cited by respondent in support of this theory, contains the following language: "Where a person agrees with a real estate broker to pay him a commission, if he procures a purchaser for his property on specified terms, the broker, in order to entitle him to his commission, *is bound to present a purchaser who is ready, able, and willing to buy* on the *proposed* terms."

And Ketcham v. Axelson, 160 Iowa, 456, 142 N. W. 62, also cited

by respondent, contains the following language in the syllabus, paragraph one: "When a broker contracts to procure a purchaser for his principal, who will purchase on terms satisfactory to the latter, and produces a purchaser *who is ready, able, and willing to purchase on such terms,* and with whom the principal enters into an enforceable contract, the broker has earned his commission though the contract is afterwards canceled by the principal without the broker's consent."

It will thus be seen that the only objection to the charge given in this case is the interjection of the paragraph by reference to exhibit "A." If this unfortunate reference had been omitted, there could be no criticism of the charge. It is undoubtedly correct, as stated by the trial court, that if a dispute existed as to that part of the listing contract having reference to the terms upon which the land should be sold, and pending this dispute exhibit "B" was produced and shown to Reeds as plaintiff's version of the listing contract, and Reeds then accepted the same, it would probably be presumed that he had receded from his position upon the contract, and had accepted the version contended for by plaintiff. In such a case he would be liable for *some commission,* either $1,200 as claimed by plaintiff, or $400 as claimed by himself, but there would still be a dispute upon this proposition. The trial court evidently considered the signing of exhibit "A" a conclusion of this dispute, and instructed the jury that if Reeds signed exhibits "A" and "B" he would owe the $1,200 commission. Herein lies the error. Exhibit "A," as we have already shown, does not refer to commissions at all, and this question should have been submitted to the jury upon the oral testimony. For this error a new trial must be had.

2. Shortly after the completion of the sale to Huey, defendant wrote a letter to a banker in Wyndmere, inclosing a check for $600 payable to Paulson, and stating that this was all that he owed him, and asking the banker to pay the same to Paulson and report to him what Paulson said. The letter has the appearance of having been first written $1,000 and the 6 written over the 10. This letter was properly admitted as a declaration against interest.

3. While defendant was being cross-examined he was asked whether he had not attempted to have plaintiff arrested because he had sent him a dunning letter regarding this commission. Defendant was not

given an opportunity to admit prejudice or bias against plaintiff, and the admission of the testimony was for that reason error.

There are other assignments of error, but we do not believe they will arise upon a second trial of the action. Judgment is reversed and a new trial ordered.