### BIANCHI et al. v. VERE.

(Circuit Court of Appeals, First Circuit. January 18, 1927.)

No. 1864.

1. Brokers ⊘⇒40—Purchaser of property of a corporation held not liable for commission to an agent of the corporation because of negotiations with him for purchase of its stock and bonds.

Complainant, as agent for the stockholders, made a tentative contract with defendant, subject to approval, for the sale of the stock and bonds of a corporation, in which contract defendant agreed to pay complainant's commission in addition to the agreed price. The sale was not approved, but complainant's principal cabled a price at which the corporation would sell its property in Porto Rico, and complainant gave the cablegram to defendant, whose representative went to France and negotiated the purchase with which complainant had nothing to do. *Held*, that complainant was never agent for defendant, that the two negotiations related to different subjects-matter, and that the handling of the cablegram to defendant did not establish such continuity between them as to render defendant liable for a commission.

2. Appeal and error ⊘⇒996.

Finding based on inferences from uncontroverted facts has not the weight in an appellate court of a finding of fact.

Appeal from the Supreme Court of Porto Rico.

Suit in equity by Charles Vere against Francisco Bianchi and others. Decree for complainant, and defendants appeal. Reversed and remanded.

Francis G. Caffey, of New York City (George W. Study, Frank Bianchi, and Bouvier, Caffey & Beale, all of New York City, on the brief), for appellants.

Martin Travieso, of New York City, for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from a judgment of the Supreme Court of Porto Rico, reversing that of an insular district court.

[1] In his bill of complaint the complainant sought to recover against the defendants, Francisco Bianchi, Juan Bianchi, Rosario Bianchi, and her husband, Miguel Esteve, alleged to be partners under the firm name of Sucesores de Bianchi, hereinafter referred to as Bianchi, and Carlos Cabrera and Cayetano Coll y Cuchi, in the alternative, either the sum of $132,525, as commission upon the sale of a sugar plantation in the island of Porto Rico, known as Central Coloso, and owned by the Sucrerie Central Coloso, a French corpo-

ration, with its main office in Paris, or, in case Cabrera and Coll y Cuchi had been paid part of this sum, then the sum of $70,841 as a commission for services rendered by the plaintiff in the sale of Central Coloso.

Some time in April, 1916, one George Servejean, a resident of La Battisse, France, representing himself to be a chief stockholder and representative of the remainder of the stockholders of the French corporation, wrote to the plaintiff, an old acquaintance and an associate of the former when he was a resident of Porto Rico, stating in substance that there was an opportunity to become the owner of part of the stock of the French company, presumably a controlling interest, with a guaranty to a bank to which the company was indebted, and stating: "If by chance you see that your negotiations promise results, you must reserve a commission for yourself."

The proposition appears to have been to sell enough of the stock of the French company to give the purchaser control, or, in the language of the letter, to "substitute himself for the present company, with a guaranty for the bank to preserve the majority for you as it already has. In any event, I offer myself to be the intermediary between the group, who would carry out the affair, and the bank, which would relinquish the affair."

In reply to this letter the plaintiff, by cable, asked for an option for two months.

In reply to this cable Servejean wrote the plaintiff the terms upon which the controlling interest, presumably, in the French corporation, could be acquired. They were as follows:

It is a question then of taking
6,500 shares at 100 frs........ 650,000 frs.
2,750 bonds at 460 frs.......... 1,265,000 frs.
Money advanced to the Central
by the bank, more or less..... 1,200,000 frs.

Total .................. 3,115,000 frs.

Stating also that the bank would not exact immediate payment if purchasers offered necessary guaranties, and also:

"Neither is it a question of sale, but of substitution of one company for another, giving it all the same powers and authority."

After receipt of this letter the plaintiff communicated its contents to Cayetano Coll y Cuchi, a lawyer, who told him that he had a client named Carlos Cabrera, a sugar expert, who the plaintiff consented might be associated with him and Coll y Cuchi in the attempt to sell the stock and bonds of the French company. Through the efforts of Cabrera and perhaps also of Vere and Coll y Cuchi, Bian-

chi was interested in the matter of the purchase; but after a failure to obtain an option from Servejean the parties met upon June 9, 1916, and executed the following agreement, signed by Miguel Esteve, the husband of Rosario Bianchi, one of the members of the partnership, and by F. Bianchi, another member:

"Memorandum of Agreement,

"Entered into to-day, June 9th, between the undersigned.

"Mr. Servejean, chief stockholder and representative at the same time of the rest of the stockholders of the 'Sucrerie Centrale Coloso' of Paris, France, having commissioned Charles Vere, merchant, of San Juan, P. R., to negotiate the sale of said company in the following form:

"Six thousand five hundred shares at one hundred francs (650,000) six hundred and fifty thousand francs.

"Two thousand seven hundred and fifty bonds at four hundred and sixty francs, one million two hundred and sixty-five thousand francs.

"These stocks and bonds constitute the total active capital of said company.

"Moreover, the purchasers will assume the debt of the corporation, which amounts to one million two hundred thousand francs in a bank of France that will be named.

"And Mr. Vere having in his turn commissioned Carlos Cabrera and Cayetano. Coll y Cuchi to act as agents in the matter, and having settled with the parties undersigned in this contract upon the conditions which will be named, we make known by these presents that Francisco Bianchi and Miguel Esteve have agreed to carry out the purchase upon the following terms:

"First. To accept the terms proposed by Mr. Servejean paying for the stocks and bonds in cash and in francs at the rate of exchange on Paris of the day upon which the sale is effected.

"Second. Assuming the debt of the bank.

"Third. Paying a commission to Messrs. Vere, Coll y Cuchi and Cabrera of ($132,-525) one hundred and thirty two thousand and five hundred and twenty-five dollars, of which one-third part will be paid in cash and the rest will be assumed as a debt by the purchasers to be paid the 30th of June, 1917.

"Fourth. If on the day of the payment of the principal amount, the exchange should be higher than fifteen per cent (15%) the purchasers will credit the sellers, within the margin offered by the exchange, with a sum sufficient to bring the amount of the total

commission up to ($140,000) one hundred and forty thousand dollars.

"This agreement is subject to the approval of the transaction in Paris.

"Miguel Esteve.
"F. Bianchi.
"Ch. Vere."

Upon the same day the plaintiff, Cabrera, and Coll y Cuchi entered into an agreement stating in substance that Servejean, as chief stockholder and representative of the rest of the stockholders of the French corporation, had commissioned the plaintiff to negotiate the sale of the stock and bonds of the French company in accordance with Servejean's letter of May 10th to the plaintiff, and that the plaintiff had commissioned Cabrera and Coll y Cuchi to act as agents in the matter; that the sale had been made to Miguel Esteve and Francisco Bianchi in accordance with these terms, and they had agreed to pay a commission to Vere, Cabrera and Coll y Cuchi of $132,525, to be divided as follows: $70,841 to the plaintiff, and $30,851 to each of the other parties.

Upon the conclusion of the agreement of June 9th with Esteve and F. Bianchi, who represented the firm of Bianchi, the following cable was sent to Servejean by Cabrera:

"Transaction closed with Bianchi Brothers we will cable you promptly bank where deposit will be made."

On June 10, 1916, Servejean cabled Bianchi as follows:

"Bianchi, San Juan, P. R. Have no authority to treat; they are personal indications business if transacted probably according my cable Cabrera, not otherwise; address yourself bank. Servejean."

The record discloses that on June 5th Servejean wrote the plaintiff a letter, acknowledging receipt of a cable asking for an option in the name of Carlos Cabrera and stating that, upon receipt of this cable, he went immediately to Paris and ascertained from the president of the French company that an option could not be given, and that the company had decided upon an absolute sale of its property, and that he had cabled Cabrera on June 5th as follows:

"Will sell for $1,500,000. I will wait a month if you wish to negotiate,"

—and that he had written plaintiff and Cabrera.

This cable to Cabrera never reached him, because of a mistake in the address. The letter addressed to the plaintiff did not reach him until some time after June 9th.

On June 14, 1916, plaintiff received the following cable from Servejean:

"Would sell firmly at $1,500,000."

This cable, plaintiff testified, he turned over to Bianchi. After the disavowal by Servejean of his authority to carry out the proposition contained in his letter of May 10th to the plaintiff, and which the parties to the agreement of June 9, 1916, seemed to have understood (could not be carried out by him without the approval of other stockholders and bondholders), because the agreement contained the provision that it must be approved in Paris, the plaintiff and his associates, Cabrera and Coll y Cuchi, ceased further negotiations or attempts to sell the stock and bonds of the French company or any of its property. Francisco Bianchi, however, acting for his firm, took up the matter of the purchase, not of the stock and bonds, but of the entire property in Porto Rico of the French company, and several cables passed between him and Servejean.

June 29, 1916, he received the following cable from Servejean:

"If willing to acquire whole business upon conditions my cable June fifteenth you may come will try to obtain small reduction if not insist considering trip useless."

This cable followed others in which Francisco Bianchi had suggested that he would come to Paris to negotiate for the sale of the property, and in answer to this cable Bianchi cabled Servejean June 30, 1916:

"Agree to treat newly answer if would wait for letter which shall go immediately with new conditions if affirmative telegraph immediately Franco to give us inventory complete Royal bank does not have it next steamer direct for Spain-sails twenty-nine we think you shall have time to cable us after receiving our letter and before sailing of steamer pray answer.

"Bianchi, Mayaguez."

In answer to this cable Servejean on July 5th cabled Bianchi as follows:

"Bianchi, Mayaguez, P. R. Your letter will not arrive soon enough to respond by cable before the next boat cable immediately conditions code 'Beber' state whether you prefer to come to Paris complete inventories will be furnished you at Paris cable."

Francisco Bianchi then went to Paris and it is alleged that he purchased the entire property for $1,400,000 and the assumption of certain obligations, and this is not denied. Just when he sailed for Paris the record did not disclose.

The plaintiff testified that he was informed by Mr. Servejean that the sale of the property was concluded in Paris in the month of November following. There is no evidence

that the plaintiff was in any way connected with the negotiations leading to a sale of the property, and he testified that he had no talk with Francisco Bianchi about it before he sailed.

In the negotiations for the sale of the stock and bonds of the company the plaintiff had acted as the agent of Servejean, and in the agreement of June 9th the statement is made that he was commissioned by Mr. Servejean to negotiate the sale of the stock and bonds of the company, although under this agreement a commission was to be paid to him by Bianchi. The promise to pay the commission, however, would not constitute the plaintiff the agent of Bianchi, under the conditions well known to all the parties that the contract of sale made by plaintiff as agent of Servejean would include his commissions in the price to be paid by the purchasers.

Plaintiff does not now contend that he can recover the commission fixed by the agreement because of a sale effected in accordance with its terms; but he claims the whole commission as reasonable compensation for his services under a quantum meruit, provided his associates, Cabrera and Coll y Cuchi, have received no part of it, or, if they have received part, then he claims to recover only the amount fixed by the agreement between himself and them as the sum which he was to be paid, namely, $70,841. He claims that, because of the promise made by Bianchi in the agreement of June 9th to pay him a commission, he was constituted the agent of the partnership to negotiate for the purchase of the stock and bonds of the French company, and, having failed in this, that because he turned over to Bianchi the cable of June 14, 1916, stating that the entire property of the corporation could be purchased for $1,500,000, his agency was continued by this act, and that, although he took no part in the negotiations leading up to the purchase of the property, and did not consult with Bianchi in regard to it or the negotiations preceding it, and the purchase was made without any services rendered by him, nevertheless he is entitled to recover reasonable compensation for his services in effecting the purchase.

It is contended that he occupied the position of a broker who has been employed to sell or purchase property under terms which are expressly stated, but who, in case the sale or purchase is not effected upon these terms, but is made upon other terms by his principal, without his services, may, nevertheless, recover his commission, provided his services could be said to be the procuring cause of such sale or purchase.

In this case, however, the subject-matter in relation to which he was promised a commission by Bianchi under the agreement of June 9th was not the same as that in the subsequent negotiations between Servejean and Bianchi. The first related to the sale of stocks and bonds of the company, and the latter to the sale of its entire property in the island of Porto Rico. He had not been employed as a broker, or even agent, by Bianchi, and the cases cited upon the plaintiff's brief have therefore no application.

The District Court dismissed the plaintiff's bill; but, upon appeal to the Supreme Court of Porto Rico, it held—the Chief Justice dissenting—that, because the plaintiff acquainted Bianchi with the contents of the cable stating the price at which the entire property could be sold, the continuity between his connection with the negotiations for the sale of the stock and bonds and the purchase of the entire property was established, and that, while he was not entitled to the full compensation which he would have received if the agreement of June 9th had been carried out, he nevertheless is entitled to a reasonable compensation for his services in effecting the purchase of the property, which was fixed by it at $25,000.

[2] The finding of the Supreme Court is based upon inferences drawn from uncontroverted facts, and therefore does not have the weight in this court that a finding of fact would have. A question, not of local, but of general, law, is presented, to be determined by such inferences as this court may draw from the undisputed facts.

After careful consideration of the able opinion of the Supreme Court of Porto Rico, we are unable to concur in its conclusions that the mere incident of the communication to the defendants Bianchi of the price at which the entire property in Porto Rico of the French corporation could be purchased established continuity between the negotiations for the purchase of stocks and bonds which had failed, and in which the plaintiff participated as an agent for the seller, and a purchase of the entire property, which was made entirely without his services, and of which he was in no way a procuring cause.

The judgment of the Supreme Court of Porto Rico is reversed, and the case is remanded to that court for further action not inconsistent with this opinion, with costs to the appellants in this court.