CARLOS MANUEL TORRES, Plaintiff, Appellant and Appellee, *v.* GUILLERMO ARBONA, JR., Defendant, Appellee and Appellant, and GUILLERMO ARBONA, SENIOR, Defendant.

No. 10392.   Argued June 6, 1951.—Decided July 19, 1951.

720

*Carlos E. Colón for* appellant-appellee.    *Leopoldo Tormes García* for appellee-appellant.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Carlos Manuel Torres brought an action against Guillermo Arbona, Jr., and Guillermo Arbona, Senior, to recover compensation for services rendered and other relief.   He alleged that he is a broker and that on or about March 1949, the defendants engaged him to procure the sale of a farm of their own which they use for the raising of cattle and for a dairy; that for four weeks the plaintiff engaged himself exclusively in procuring the sale of said farm and was finally able to find a purchaser therefor for the price and under the conditions stipulated by the defendants, which sale was effected, the corresponding deed being partially executed, and rescinded twenty-four hours later; that the defendants bound them-

selves with the plaintiff to pay to the latter $1,650 for his negotiations, but in the act of the sale they requested him to reduce the amount to $1,100, to which he agreed, the defendants binding themselves to deliver said sum to him in a few hours; that after the sale was perfected and consummated, the purchaser found hidden defects in the property, since upon coming into possession thereof he learned that the same was under quarantine by orders of the Insular Government because the cattle in question had tuberculosis, wherefore the purchaser informed the defendants that he could not accept the farm nor the cattle included in the sale in that condition and that he rescinded the sale; that since the defendants at no time apprised the plaintiff nor the purchaser of such defect in the property, the plaintiff acted in good faith, completed his negotiations and procured the sale; that the services he rendered are reasonably worth $1,650, which sum had been expressly agreed to; that in the event that the plaintiff were not entitled to be paid his fees, because of rescission of the sale, he has suffered damages amounting to $1,650 in the rendering of his services, due to the negligence, omission, fault, and bad faith of the defendants in hiding from him the defects of the property in question.

The defendants answered denying all the essential averments of the complaint and setting up as a special defense that the complaint does not state facts constituting a cause of action and that had the plaintiff intervened in the business to which he refers in his complaint, his right to compensation did not arise until the property involved in the deal had been sold to the person whom· the plaintiff had contacted; that the deal was never carried out and that plaintiff's intervention, far from procuring the deal, hindered and prevented it.

After several questions of law, which need not be reviewed, were raised and disposed of, the case was tried and the parties introduced abundant oral and documentary evidence. The court *a quo* entered judgment granting the complaint and

adjudging the defendant, Guillermo Arbona, Jr., to pay to the plaintiff the sum of $1,100, plus costs.[1] Plaintiff moved for reconsideration in order to be granted attorney's fees, but his motion was overruled. Both parties appealed.

In support of his appeal the defendant Arbona, Jr., maintains that the lower court erred (1) in rendering judgment based on plaintiff Carlos M. Torres' testimony, despite the fact that the latter had said and acknowledged that his right to recover his commission arose when the purchaser he had furnished, purchased, received title to the properties, paid to the seller the part of the agreed price and legally bound himself to fulfill the remaining conditions imposed by the seller; (2) in considering that the contract of sale was consummated; (3) in deciding that the herd of cattle existing in the "Monserrate" farm was suffering from bovine tuberculosis prior to March 1949, and that the defendants acted in bad faith in not informing said fact to the plaintiff and to the purchaser; (4) in ordering the defendant Arbona, Jr., to pay to the plaintiff the sum of $1,100 for his alleged professional services, inasmuch as regardless of the grounds which the purchaser Carlos Santiago had, the latter was never ready, willing and able to purchase the "Monserrate" farm and the herd of cattle under consideration; and that (5) the judgment is contrary to the law and to the facts.

As the errors assigned by the defendant-appellant challenge mainly the findings of fact of the lower court, we shall briefly set them forth as follows:

"1. That the plaintiff, Carlos Manuel Torres, is and has been, for over 15 years, a real estate broker in this jurisdiction of Ponce, Puerto Rico.

"2. That on or about March 1949, the defendants requested plaintiff's services in order to sell for them the 'Monserrate' farm, located in the Maragüez ward of Ponce, and the herd of cattle existing thereon.

---

[1] The complaint was dismissed as to the codefendant, Guillermo Arbona, Senior, on the ground that he was merely his son's agent, who was the actual owner of the farm and cattle put up for sale.

"3. That the conditions of this sale were the following:

'Selling price, $55,000 of which the purchaser was to pay in cash, upon the execution of the deed, the sum of $10,000; he would pay $15,000 by signing and delivering 15 promissory notes for $1,000 apiece, each one to mature on successive years, secured by a mortgage on that same 'Monserrate' farm; and the purchaser would bind himself to pay the remaining $30,000 to the mortgagee, Herminio Flores, in whose favor is a mortgage over that property, limited to the aforesaid sum of $30,000.'

"4. That the defendants agreed with the plaintiff to give him the amount of $1,100, equivalent to 2 per cent of the selling price, if he managed to sell . . . the aforesaid farm 'La Monserrate' in the above-mentioned sum of $55,000. Originally there were other agreements between the defendants and the plaintiff, but they were modified by the foregoing agreement.[2]

"5. That when engaging plaintiff's services, the defendants did not let him or any other person know that the cattle existing in the farm 'La Monserrate,' which were included in the deal, were in quarantine of the Department of Agriculture and Commerce of Puerto Rico, because some of them were affected by bovine tuberculosis.

"6. That the farm 'La Monserrate' and the cattle in question have been in quarantine, suffering from bovine tuberculosis, since before March 1949, until the date of this action.

"7. That the plaintiff took multiple steps to sell the aforesaid farm and herd of cattle, using his own automobile, incurring the consequent expenses thereby, and finally found a purchaser for the farm in the person of Mr. Carlos Santiago, who has for many years been the owner of a rural estate located in the Canas Ward, in La Cotorra, of Ponce, and is engaged, also, in the dairy business.

"8. That the plaintiff succeeded in making Mr. Carlos Santiago enter into a contract of sale of the 'La Monserrate' farm with Guillermo Arbona, Jr., including the cattle existing in the property, for the sum of $55,000. This contract was perfected with the consent of the parties, but it could not be ratified by public deed before a notary due to the following situation: The defendant sellers went on a Good Thursday[3] to Mr. Hernández

---

[2] Plaintiff testified that originally a three-per cent commission was mentioned, but that when the contract of sale was executed it was agreed to reduce his commission to 2 per cent.

[3] April 14, 1949.

Mato's office to execute the deed of sale and mortgage. The purchaser, Carlos Santiago, also appeared, as well as the mortgagee, Herminio Flores, in order to cancel in part in favor of the sellers, Messrs. Arbona, the mortgage lien on the 'Monserrate' farm up to the amount of $30,000. This partial cancellation of the mortgage was effected. (Plaintiff's exhibit 3). The deed of sale and mortgage was also drawn up by Notary Hernández Matos and was signed on that same day by the seller, Guillermo Arbona, Jr. The purchaser, Carlos Santiago, did not sign it because the ready money he was bound to deliver in said act to the seller, was deposited in the bank and since it was Good Thursday, and the next day Good Friday, the bank had closed at noon, wherefore the parties then agreed to finish signing the deed next Monday. On that same Good Thursday the purchaser, Santiago, went to the 'Monserrate' farm, together with veterinary Dr. Armstrong, who after an examination told Mr. Santiago that the cattle in the farm were under quarantine. Upon learning of this situation Mr. Santiago notified the plaintiff on that same day that he was calling off the sale. When Guillermo Arbona Jr., found out that the purchaser was calling off the deal, he went before Mr. Hernández Matos and crossed out his own signature from the deed of sale.

"9. That the defendants were aware that the herd of cattle existing in the 'Monserrate' farm was under quarantine because they had bovine tuberculosis, before and after the deal with Mr. Carlos Santiago; that the aforesaid defendants hid this fact from the plaintiff and the purchaser, Mr. Carlos Santiago. That the quarantine of the herd of cattle was the reason why Mr. Santiago rescinded the contract of sale already perfected."

The lower court set forth in its conclusions of law that when the defendants engaged plaintiff's services to procure the sale of the farm together with the herd of cattle, they were as a question of law taking steps towards selling a herd of cattle which because of a contagious disease was not at all salable pursuant to the law, citing § 1383 of the Civil Code, 1930 ed.[4] and *Alonso Hermanos* v. *Matos*, 46 P.R.R. 877;[5]

---

[4] Section 1383 of the Civil Code, insofar as pertinent, reads:

"Animals and cattle suffering from contagious diseases shall not be the object of a contract of sale. Any contract made with regard to the same shall be void."

that the defendants hid in bad faith from the plaintiff and from the purchaser the fact that the cattle were suffering from a contagious disease and were in quarantine, notwithstanding that they were personally aware of the fact, such concealment being the sole and proximate cause why no deed of sale was executed and giving rise to rescission by the purchaser; that even assuming that the sale was not consummated, the plaintiff is entitled to be paid for his services as agreed to, inasmuch as if the sale failed, it was due only to the fact that the defendants concealed in bad faith the contagious disease in the herd existing on the farm "La Monserrate," and not to any act on the part of the broker.

The findings of fact of the trial court are amply supported by the evidence. Its conclusions of law are likewise correct and the judgment, as we shall see, will be affirmed.

The contract entered into by the plaintiff and the defendants in regard to the sale of the farm and the cattle, through the former, was a brokerage contract.[6] Brokerage contracts are but a juridical figure, a specialty comprised within agency, by whose generic provisions they must be governed. Judgment of the Supreme Court of Spain of June 11, 1947, Vol. 19, Second Series, *Jurisprudencia Civil*, p. 134. Hence, the provisions of our Civil Code in connection with agency are strictly applicable to contracts of brokerage. To this effect, § 1620 of our Civil Code provides that: "The principal must . . . indemnify the agent for all losses and damages he may incur in complying with the agency, without fault nor imprudence on the part of said agent."

In the instant case it is unquestionable that pursuant to the evidence believed by the court, the contract of sale in ques-

---

[5] The main opinion in *Alonso Hermanos* v. *Matos* appears in 46 P.R.R. 454.

[6] For a definition of the word brokerage (*corretaje*) in Spanish see Lorenzo Benito's *Manual de Derecho Mercantil*, Vol. III, p. 135, 1929 ed.; and *Enciclopedia Jurídica Española*, edited by Francisco Seix, vol. 9, p. 704.

tion was perfected.[7] There was a meeting of the minds as to a specific object (the farm and the herd of cattle) and a certain price ($55,000 of which $10,000 were to be paid in cash, $15,000 in ·promissory notes secured by a second mortgage, and $30,000 in a previous first mortgage). There was no consummation of the sale, since consummation in this type of contracts arises at the moment that the thing which is the object of the sale passes to the purchaser and the price to the seller. *Enciclopedia Jurídica Española, supra,* vol. 8, p. 667. We shall see, nevertheless, what effects the failure to consummate the contract may have under a factual situation like the instant.

Construing a situation similar to the one under consideration, the Supreme Court of Spain, in its judgment of July 5, 1946, vol. 15, Second Series, *Jurisprudencia Civil,* p. 718, decided that although in its judgment of December 2, 1902, it had declared that a real estate broker was not entitled to collect his commission, even though he had found a prospective buyer of the real estate he had been asked to sell, when the contract of sale was not perfected because the interested parties had not settled a fundamental difference among them in regard to the thing to be sold, *such doctrine, however, "is not applicable in cases where the steps taken by the broker achieved the intended purpose, the contract of sale being perfected between the seller and the purchaser, . . . even though the contract is subsequently rescinded, which cannot affect the rights of the real estate broker, who must receive the proper compensation, pursuant to § 1711 of the Civil Code."*[8] See also the judgment of June 11, 1947, *supra,* in

---

[7] Section 1339 of the Civil Code provides that:

"'The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered."

[8] Section 1711 of the Spanish Civil Code is equivalent to § 1602 of our Code, which provides that:

"In the absence of an agreement to the contrary, the agency is presumed to be gratuitous.

which it was said that "the voluntary nonfulfillment or discontinuance of the total or partial consummation of the contract, in the execution of which the agent intervened, *does not relieve the party who engaged the latter from his duty to pay him the compensation agreed to.*" (Italics ours.) *Cf.* Judgment of said Court of November 26, 1919, 148 *Jur. Civ.* 215; *Vere* v. *Bianchi et al.*, 33 P.R.R. 621; *Bianchi* v. *Vere*, 17 F. 2d 22.

American decisions are almost unanimous in the sense that in cases of this nature it is enough that the broker employed to sell a specific object, find a purchaser ready, willing and able to purchase [9] for the broker to be entitled to commission, as well as in the sense that when it has been agreed that the broker will be entitled to commission upon the consummation of the contract, the right to commission subsists where the failure to consummate the deal has been due to the fraud, fault, or bad faith of the seller. *Dotson* v. *Milliken*, 209 U. S. 237, 52 L. Ed. 768; *Crowe* v. *Trickey*, 204 U. S. 228, 51 L. Ed. 454, 460; *Kock* v. *Emmerling*, 63 U. S. 69, 16 L. Ed. 292; *McGavock* v. *Woodlief*, 61 U. S. 221, 15 L. Ed. 884; *Gaston etc.* v. *Warner*, 260 U. S. 201, 67 L. Ed. 210; *Preston* v. *Postel*, 300 Fed. 134; *Avis* v. *Rebhan*, 267 Pac. 898; *Jones* v. *Briggs*, 132 Atl. 817. See also 8 Am. Jur., pp. 1066 and 1097, §§ 141 and 184; 20 A.L.R. 294; 51 A.L.R. 1392; 156 A.L.R. 1398; 169 A.L.R. 605. Of course, if the broker or prospective buyer is aware of the defects or vices of the property, the seller is not liable, inasmuch as he cannot be charged then with bad faith, fault, or negligence. See foregoing cases. As the evidence believed by the lower court was to the effect that prior to the engaging of plaintiff's services by the defendants, as well as subsequently, the latter knew that the herd of cattle in question was suffering from bovine

---

"Nevertheless, if the agent has for an occupation the performance of services of the kind to which the agency refers, the obligation of compensating him is presumed."

[9] From the evidence believed by the court it can easily concluded that Carlos Santiago was a purchaser ready, willing, and able to purchase.

tuberculosis and that both the broker and the purchaser were not aware of that fact, said court was able to conclude that the failure to consummate the contract was due to the bad faith or fault of the defendants.

We agree entirely with the rules of law set forth by the Supreme Court of Spain and by the American decisions in the cases above cited. Since the contract of sale was perfected, since Carlos Santiago was a purchaser ready, willing, and able to purchase and since it was concluded that the sale fell through because of the bad faith or fault of the defendants, the plaintiff is entitled, under such rules, to recover as indemnity the commission agreed to. Such is the case, even though it were understood that the agreement between the parties was that the broker would not receive his commission until the contract were consummated.

As to plaintiff's appeal, it will suffice to say that the award of attorney's fees is discretionary with the trial court and that we do not think that there was an abuse of discretion in the instant case.

Inasmuch as the errors alleged by either party were not committed, the judgment appealed from will be affirmed.

